### M. HALFF & BRO. v. T. M. O'CONNOR.

Delivered June 10, 1896.

**1. Contract—Power of Agent to Stipulate for Liquidated Damages.**

Appellants addressed to appellee a letter in the following terms: "R. comes to see you to purchase your cattle in M. County, adjoining our pasture, or any purchase he may make of you on this trip for joint account for us and himself, we have authorized him to do so, and have agreed to make any reasonable advance on delivery of contract at any bank in this city, as an advance on contract and as to fulfillment of same." Held, that the letter authorized R., in the contract for the purchase of the cattle, to stipulate for liquidated damages, in the event of its breach by the purchasers.

**2. Same—Liquidated Damages or Penalty.**

A provision in a contract clearly stipulating for liquidated damages will not be construed as a penalty unless the amount bear such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation of the parties of the compensation to be paid for the prospective loss; and where no such approximation is made to appear by the evidence between the actual and the stipulated damages, the basis of recovery must be the damages stipulated in the contract.

APPEAL from Bexar. Tried below before Hon. ROBERT B. GREEN.

*J. F. Onion* and *Lewy & Sehorn*, for appellants.

*Proctors* and *Swearingen & Brooks*, for appellee, in support of their propositions, quoted in the opinion, cited: Yetter v. Hudson, 57 Texas, 604; Eakin v. Scott, 70 Texas, 442; Wright v. Dobie, 3 Texas Civ. App., 194; Indianola v. Railway, 56 Texas, 606; Collier v. Betterton, 29 S. W. Rep., 467, 490; Mills v. Paul, 30 S. W. Rep., 558; Cothran v. Marmaduke, 60 Texas, 372; Miller v. Marx, 65 Texas, 133; Walker v. Brown, 66 Texas, 566; Stratton v. O'Connor, 34 S. W. Rep., 158; Newbrau v. Snider (West Va.), 88 Am. Dec., 667; 17 Am. & Eng. Ency. of Law, 841, 889; Parsons on Partnership, 70, 71.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against appellants and R. W. Rogers on the draft and contract set out in our conclusions of fact, for $5000, as liquidated or stipulated damages.

The petition charged that R. W. Rogers, under an agreement and understanding with M. Halff & Bro. which constituted a partnership, was about to visit Victoria, Texas, to purchase for himself and appellants, appellee's cattle, etc.; that in the furtherance of such purchase on their joint account, and, as express authority to Rogers, the letter of March 7, 1893, copied in our conclusions of fact, was executed by Halff & Bro. for presentation to appellee; that acting under his understanding and agreement with appellants, and in pursuance of the partnership agreement, Rogers went to Victoria to buy certain cattle of appellee in McMullen County at $10 per head, and offered, in accordance with said letter as well as by virtue of his power as such partner, to advance $5000 on the purchase; that the proposal was accepted by appellee in reliance upon the power conferred by said letter, and that said contract of purchase would be a joint venture of M. Halff & Bro. and R. M. Rogers; that the written contract, which is set out in our conclusions of fact, was entered into between appellee and M. Halff & Bro., and Rogers, with a provision for liquidated damages as therein stated; that the $5000 therein recited as paid was not paid, but that Rogers executed and delivered to appellee a draft on M. Halff & Bro. therefor, and that on presentation thereof to M. Halff & Bro., payment was refused.

M. Halff & Bro. answered by general and special exceptions, a general denial, and specially denied under oath both the execution of the contract and the alleged partnership between themselves and Rogers.

The exceptions to the petition were overruled, and the cause was tried before a jury, who, in obedience to the instruction of the court, returned a verdict for appellee, upon which judgment was rendered in his favor against M. Halff & Bro. and R. W. Rogers for $5814.40, and in favor of R. W. Rogers against appellants for a like sum in the event he should be compelled to pay appellee's judgment.

The judgment of appellee against M. Halff & Bro. is alone complained of on this appeal.

*Conclusions of Fact.*—On March 7, 1893, the appellants M. Halff & Bro., on the day it bears date, wrote and signed the following letter:

"San Antonio, March 7, '93.
Mr. D. M. O'Connor and T. M. O'Connor, Victoria, Texas.
Dear Sirs:—

Mr. R. W. Rogers comes to see you to purchase your cattle in Mc-Mullen County, adjoining our pasture, or any purchase he may make of you on this trip for joint account for us and himself, we have authorized him to do so, and have agreed to make any reasonable advance, on delivery of contract at any bank in this city, as an advance on contract and as to fulfillment of same; you can also if you wish make him a reasonable offer on a year's lease of your pasture, and if cheap enough, we might take.    °                        Respectfully,

M. HALFF & BRO.

"Please attach this letter to contract, if you should make any with Mr. Rogers.

M. H. & B."

This letter was delivered by appellants to Mr. Rogers, who exhibited it to the appellee, T. M. O'Connor, as his authority for making a contract which was entered into in writing and executed on the 9th of March, 1893, by appellee as party of the first part, and R. W. Rogers and M. Halff & Bro., as parties of the second part, the first two paragraphs of which alone are applicable to this action, and are as follows:—

"First. That said party of the first part undertakes and agrees to gather, brand and deliver to said parties of the second part, all the cattle which by reasonable effort can be gathered and delivered, belonging to said party of the first part, and now in his pasture generally known as the Campbell Ranch, in McMullen County, Texas, and in pastures contiguous thereto and belonging to said ranch; such gathering, branding and delivery to be at the expense of said party of the first part, and the branding to be as designated by said parties of the second part; the work of gathering, branding and delivering to commence about March 20, 1893, and to be completed by one delivery of cattle, to be made as soon as practicable, and such cattle as are then offered for delivery, and none others, are to be embraced in this contract, and such delivery to be on said Campbell Ranch.

"Second. That said parties of the second part undertake and agree to receive said cattle tendered for acceptance, and do promise to pay therefor the sum of ten ($10) dollars per head for each animal so delivered, except calves which may have been born since January 1, 1893, which are not to be counted in estimating the amount to be paid by said parties of the second part under this contract, but which calves are to be delivered thereunder; and after delivery by said party of the first part of said cattle, and acceptance by said parties of the second part,

all liability of said party of the first part under this contract shall cease. And in part performance of their obligation to pay said sum per head for said cattle, said parties of the second part have paid the sum of five thousand ($5000) dollars, receipt of which said party of the first part acknowledges, and in the event said parties of the second part shall receive and pay for such cattle as stated, then said sum paid is to be credited upon the gross purchase price for the cattle delivered under this contract, but in the event said parties of the second part shall fail to perform their contract with reference to said cattle, then said sum of five thousand ($5000) dollars so paid in cash, shall be retained by said party of the first part as his agreed and liquidated damages arising from such breach now stipulated in amount, and said party of the first part shall not be compelled to refund any part of the same, nor be permitted to recover any other or further damages from such breach, provided, however, if said parties of the second part shall in any manner have received said cattle, or any part thereof, without payment therefor as before stated, nothing herein shall prevent the recovery by said party of the first part of the purchase price of the same."

The sum of $5000 was not paid in cash to appellee as the contract recites, but on the 10th day of March, R. W. Rogers drew his draft in favor of appellee on appellants therefor; which, together with the contract with above letter of M. Halff & Bro. attached thereto, was at once sent by appellee to his agent in San Antonio, the Alamo National Bank, and was duly presented, with the accompanying papers, to the appellants for payment, whereupon they refused to pay it, and repudiated the contract upon the ground they had not authorized its execution by Rogers.

D. M. O'Connor, one of the parties to whom the letter of March 7, 1893, was addressed, is appellee's brother; he never did reside in Victoria, but resided in Refugio County. The appellee was then, and had been for many years a resident of the city and county of Victoria; and, when the contract was executed, had, in his pasture, in McMullen County, known as the "Campbell ranch" 3000 head of cattle which were contemplated by the contract and could have been delivered in compliance with its terms.

The understanding between M. Halff & Bro. and Rogers was that the former were to furnish the money to purchase the cattle, that the latter should buy and sell them and that they were to divide the profits. In making the contract with appellee, Rogers thought that he was fully authorized according to his understanding with M. Halff, of M. Halff & Bro., to make the contract with O'Connor and draw the draft. O'Connor had no notice of any limitation of Rogers' authority, and thought he was authorized by M. Halff & Bro. to make the contract, and in making it acted in good faith.

*Conclusions of Law.*—Under the first, second, third, fourth, sixth, seventh, ninth and eleventh assignments of error are asserted the following propositions:—

"(1). The letter of March 7, 1893, did not authorize Rogers to execute so much of the contract, for the breach of which this suit is brought, as stipulates and fixes $5000 as the amount of damages recoverable for a breach thereof.

"(2). The provision in the contract with reference to O'Connor's retaining the $5000 recited to have been paid, as liquidated damages in the event M. Halff & Bro. should fail to carry out the contract, is a provision for paying a penalty which Rogers had no authority to bind his principals to pay.

"(3). A stipulation in a contract whereby one of the parties thereto agrees to pay the other a fixed sum as damages occasioned by a breach thereof, will be treated by the court as a penalty, and the full amount thereof not being recoverable, unless the one claiming the sum alleges and proves that the amount so fixed bears some proportion to the amount of damages actually sustained by the person suing."

After interposing propositions in contravention of these, the appellee urges as an independent counter-proposition, the following: "The petition charged M. Halff & Bro. and Rogers with liability upon the contract sued upon as partners, and as such partnership was established by the entire and uncontradicted testimony in the case, the court correctly charged the jury to find for plaintiff, as no other verdict and judgment could have been rendered in this case."

We will consider these propositions in the order presented.

1. Did the letter written by M. Halff & Bro. authorize the execution of a contract for the purchase of cattle with a stipulation for liquidated damages in the event of a breach by appellants of such contract? It is argued by appellants that, as their letter constituted Rogers their special agent, the power thereby conferred upon such special agent must have been strictly pursued, else they, as principals, cannot be bound by his contract; and that when a special agency is created by an instrument in writing, such writing will be strictly construed, and will be held to include those powers only which are expressly given by the terms of the instrument, and those which are necessary, essential and proper to carry out those expressly given. It is elementary, that a principal is not bound by acts of a special agent who exceeds his authority, unless the principal has held him out as possessing a more enlarged authority. If, therefore, from the acts of the principal respecting his agent, no authority can be inferred, the power of the agent to act for his principal must be found in the writing conferring it, and no power not expressed, except such as are necessary and proper to carry out that expressly given, can be engrafted on the instrument. But, "when an express authority is conferred by an informal instrument, such as a letter of advice or instruction, it is construed with more liberality than a formal and deliberate instrument. This rule has its foundation in the convenience and necessities of a commercial community, and would seem indispensable to general confidence and security in the operation of trade and com-

merce." Merriman v. Fulton, 29 Texas, 105; Story on Agency, secs. 82, 83, 75.

"An agent may always bind his principal when acting within the scope of his authority, and the exent of his authority is to be measured by the nature of the business, the subject matter of the contract, the varying circumstances of the transactions involved, and it includes, unless expressly excluded, all the usual modes and means of accomplishing the objects of the agency." Miller v. McDaniel, 1 Posey's Un. Cas., 626; Story on Agency, sec. 85. "Every delegation of authority carries with it as an incident power to do those things which are reasonable to be done in order to effectuate the purpose for which it was created." Collins v. Cooper, 65 Texas. "It is the duty of the principal if he desires an authority to be executed in a particular manner to make his terms so clear that they cannot be misconstrued; if the authority be reasonably susceptible of two different meanings, and the agent in good faith and without negligence adopts one of them, the principal cannot be heard to assert, either as against the agent or against third persons who have, in good faith and without negligence, relied upon the same construction, that he intended the authority to be executed in accordance with the other interpretation." Mechem on Agency, sec. 315.

The foregoing principles are quoted in appellee's brief, from which we have copied in the order they are therein arranged. In the light of them, appellee's counsel make the following argument (which we adopt) to show that under a reasonable construction of the letter, Rogers was authorized in the contract of purchase to make a provision for liquidated damages in the event of its breach:

"This letter says: 'Rogers comes to see you to purchase your cattle,' etc; also 'any purchase he may make of you for joint account for us and himself we have authorized him to do so,' etc. Suppose we consider these words alone, for certainly there is nothing in the other part of the letter to limit their import. Then Rogers is authorized to make 'any purchase.' One of the definitions Webster gives of the verb 'to purchase,' used in this letter, is 'to bargain for,' and of the noun 'purchase,' also used by Halff & Bro., is 'bargain,' and in the sense as here used clearly this meaning is intended. Then Halff & Bro. say by this letter 'Rogers comes to bargain for your cattle' and 'any bargain he may make, he is authorized to make.' This bargain then which Rogers is authorized to make comprehends the power to agree to the various terms of the purchase, the number of cattle to be bought, and when and where to be delivered, the price to be paid for said cattle, how much to be paid in cash, and when balance to be paid, and all the details or terms of such bargain. Is it not absurd to contend that in this case, Rogers, with unqualified power to buy at whatever price he pleases, whatever number of cattle he chooses, has not power for the protection of both Halff & Bro. and himself, as well as of O'Connor, to stipulate with the latter for liquidated damages in the event of a

breach? Rogers is authorized to make 'any purchase;' his authority is in no wise limited; this contract is a purchase, and hence within his authority; and one of its terms demanded by O'Connor or Rogers (the evidence does not disclose which) is such provision for liquidated damages, apparently inserted for the protection of both parties. We insist that this stipulation for liquidated damages is a mere term of the purchase which was authorized. Suppose O'Connor had refused to sell his cattle unless he was paid for them in cash when the contract was executed, can it be denied but that Rogers had the power to acquiesce in such demand? Certainly not. Then suppose O'Connor said he would not sell his cattle unless Rogers agreed to provide for liquidated damages in the contract, is it not equally a term of a purchase which Rogers had the right to assent to as a something 'reasonable to be done to effectuate the purposes of the agency' and certainly authorized when his principals did not provide that he should not agree to such demand? In other words, when Halff & Bro. authorized Rogers to make 'any purchase' they meant what the letter said;—that any bargain for cattle, which Rogers might think to the interests of Halff & Bro. and himself, he was authorized to make, and this being a purchase, even though it contained such liquidated damages provision, still Rogers thought it to be to the interests of himself and Halff & Bro. to make such purchase, and accordingly he was empowered by said letter to execute the contract evidencing such bargain.

"We think we can go further and say that not only was Rogers authorized to make such stipulation in said contract, but also that this letter, fairly construed, directed Rogers to make this very contract with such liquidated damages provision. For the letter, after declaring Rogers' authority to purchase and execute a contract thereof, then declares that 'we [M. Halff & Bro.] have agreed to make any reasonable advance on delivery of contract at any bank in San Antonio', thus evidencing a willingness to pay on presentation of said contract. Let us consider, to accomplish what purposes could they have made payment on presentation of said contract at any bank in San Antonio? This could only be, first, as a simple part payment on the cattle; and second, as a sum to be received by O'Connor to insure him in the performance of said contract. Now if O'Connor received money on account of said purchase price simply, it would not insure the performance of said contract, as in the event his actual damages from a breach should have been less, he could be compelled to refund the excess by him received; he could only be insured or guaranteed in its performance by a liquidated damages provision and payment of the sum agreed upon. These are the only two purposes we can conceive of which the payment on presentation of said contract could serve. Then, when Halff & Bro. say in said clause of this letter that they 'will make any reasonable advance on delivery of said contract', had they said no more, it might well be argued that it expressed a willingness to pay on account of the purchase price, and still in the absence of an express direction that it should not be

otherwise paid, we think Rogers would have been authorized to contract for liquidated damages; but when the letter further declares such sum to be paid 'as an advance on contract and as to fulfillment of same,' what else can it mean except that this sum is to be paid both on account and to insure fulfillment?   When Halff & Bro. wrote 'as an advance on contract,' they had fully covered the first idea of part payment; when they added 'and as to the fulfillment of same,' they showed an intention that the payment should serve another purpose also, and equally covered the idea that this sum so paid should be the liquidated damages to O'Connor from a breach of said contract, that is, as a sum paid to insure the fulfillment thereof."

We think this argument demonstrates conclusively that appellant's first proposition cannot be maintained, and that a fair and reasonable construction of the letter authorizes Rogers in the contract of sale to stipulate for liquidated damages in the event of its breach by his principals.

2.   Having determined that Rogers was authorized by Halff & Bro. to make a contract for stipulated damages in the event of its breach, we are brought to the consideration of appellants' second proposition; which is, that the provision authorizing O'Connor to retain $5000 in the event appellants should fail to carry out the contract, is a provision for the payment of a penalty for which Rogers was not authorized to bind his principals.

The provision is unambiguous; it is a stipulation, plainly and clearly expressed, for liquidated damages in the event of a breach of the contract.   Indeed, it is so clear that no other reasonable construction can be placed upon it.   The subject matter of the contract was such that the parties had the right to agree upon and stipulate the damages in the event of a breach of the contract.   Eakin v. Scott, 70 Texas, 442; Yetter v. Hudson, 57 Texas, 604; Wright v. Dobir, 3 Texas Civ. App., 194.   In fact it is not seriously contended by appellants that the stipulation is for a penalty, but they urge it should be treated as such for the reasons stated in their third proposition which we will now consider.

3.   It is said by Chief Justice Gaines, in Collin v. Betterton, 19 S. W. Rep., 468:  "It would seem that if the express intention of the parties to a contract should govern in every case, when they say that a certain sum shall be paid as liquidated damages in case of its breach, it should be construed as fixing the amount of a recovery; and yet * * * notwithstanding such provision, in certain cases the damages may be limited to a just compensation for the loss which has been suffered. Therefore the principle would seem to be that, although a sum may be named as liquidated damages, the courts will not so treat it, unless it bear such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation of the parties of the compensation to be paid for the prospective loss.   If the supposed stipulation greatly exceed the actual loss; if there be no approximation between them, and this be made to appear by the evidence, then,

it seems to us, and then only, should the actual damages be the measure of the recovery." It is not denied in this case that the contract was broken by appellants. It being broken, damages will be presumed to flow from its breach; these damages must be either actual or liquidated; the contract expressly provides for the latter; no approximation is made to appear by the evidence between the actual and the stipulated damages; this not appearing, the actual damages, under the rule quoted, cannot be the measure of recovery; hence the basis of recovery must be the damages stipulated in the contract. Therefore appellants' third proposition is inapplicable.

4. We think that appellee's counter-proposition is fully sustained by the record, and that as a partner of Halff & Bro. in the purchase of the cattle, Rogers could and did by his contract stipulate for liquidated damages for which appellants are liable.

There is, in our opinion, no error assigned that requires a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.