### ROCK v. KETON. (No. 6257.)

(Court of Civil Appeals of Texas. Austin. Jan. 5, 1921. Motion for Rehearing Granted March 9, 1921.)

1. **Sales ⟺152—Letter of buyer not cancellation of contract, but merely withdrawal of order to ship.**

Where the contract of the Food Administration, which was included in the contract for the sale and purchase of flour, expressly provided that the buyer could not cancel, etc., the buyer's letter, stating that the seller had failed to fulfill contract and demanding liquidated damages, was not a cancellation, but a mere withdrawal of any order to ship, so that, no order having been given within the thirty-day period fixed by the Administration's contract, the buyer became liable for the liquidated damages provided in such contract.

2. **Damages ⟺76—Charge established by Food Administration in event of breach of contract to accept flour held liquidated damage.**

Where as a result of the regulations of the Food Administration there was no fluctuation in the price of flour, and contracts prepared by the Administration provided, in event of buyer's default, he should pay 25 cents per barrel as booking charge, the charge must be deemed liquidated damages, recoverable by the seller in event the buyer breached the contract by failure to give shipping orders.

### On Motion for Rehearing.

3. **Sales ⟺182(1)—Question whether seller was able to fulfill contract for jury.**

In an action by a seller of flour for the liquidated damages prescribed by the Food Administration's contract against a buyer who failed to accept delivery, the question whether the seller was able and willing to comply with the contract *held* for the jury.

Appeal from McLennan County Court; Jas. P. Alexander, Judge.

Action by Charles F. Rock against Frank Keton. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

R. O. Stotter, of Waco, for appellant.

JENKINS, J. On October 13, 1917, defendant wrote Kingman Mills, at Kingman, Kan., as follows:

"Please quote us price on three cars of flour, shipments about fifteen days apart. If you can-

---

nòt fill shipment, notify us by telegram at our expense."

On October 15, 1917, Kingman Mills wired defendant:

"Subject confirmation, Diamond, within thirty days, eleven ten."

On October 15, 1917, Kingman Mills wrote defendant:

"Replying to your letter of the 13th, we wired you to-day price of $11.10 on 'Diamond K,' for shipment within 30 days. We cannot book three cars, Mr. Keton, 15 days apart, as that would make a booking of over thirty calendar days, and the government does not allow us to book over 30 days in advance. We will be glad to give you whatever shipment you desire as nearly as we possibly can."

On October 17, 1917, defendant wrote Kingman Mills:

"Your telegram of the 15th at hand. Please place our order down for three cars. We understand the regulations of booking only 30 days and will give you sufficient time for shipment of same."

On October 19, 1917, Kingman Mills wrote defendant:

"Inclosed find confirmation on three cars of 210 barrels each, booked you the 18th. We thank you for this favor, and will do our utmost to get this flour to moving in time for your requirements."

The confirmation is as follows:

"Sold to Keton Bakery, Waco, Texas. Time of·shipment, thirty days. Sale and delivery f. o. b. mill, with freight allowed to Waco, Texas. Terms, A/D. Bank, Central Texas Exchange. Sold by letter direct. Quantity, three cars, 210 barrels each. Brands, Diamond K flour; price $11.10, basis 98s.· Subject to Administration's Contract. [Signed] Kingman Mills."

The Administration's contract, which was introduced in evidence, contains the following provisions:

"It is understood and agreed that the buyer and seller shall conform to all regulations promulgated by the United States Food Administration.

"It is understood that there are no conditions, representations or warranties, verbal or otherwise, and that there shall be no assignment or cancellation of this contract, except as herein stated, and no agent or representative has authority to modify the printed terms of this contract.

"It is understood and agreed that the above order shall be shipped or delivered as specified within 30 calendar days from the time when the order is taken.

"There shall be no extension of the time of shipment or delivery under this contract, except as herein provided.

"If the buyer shall refuse to accept any shipment or delivery as specified hereunder, or shall fail to file with the seller, within 15 days of the date of the order, shipping instructions permitting the seller to ship at his option within the remaining period of the contract, or to perform any of the terms of this agreement, then the seller may, at its option, and upon due notice to the buyer, cancel this contract, and the buyer shall pay to the seller an entry charge of twenty-five (25) cents per barrel on flour. * * * The seller may pursue such other remedies as the law may provide. On the refusal or neglect by the buyer to accept any shipment or delivery as specified hereunder, or to perform any of the terms of this agreement, the seller may treat such refusal or neglect as a breach of the entire contract, for which the seller is entitled to immediately avail himself of any rights in the contract specified, but, except for reasons or reason specified herein, if the shipment or delivery as specified is not executed within 30 days from date of contract, it shall be canceled and payment of charges above specified shall be made by the buyer to the seller.

"If the seller shall fail (except for reasons herein specified) to make any shipment or delivery as specified within the time indicated by this contract, then the buyer may, at his option, cancel the shipment or delivery, and in event of such default the seller shall upon demand pay to the buyer the sum of twenty-five (25) cents per barrel on flour, * * * and the buyer may pursue such other remedies as the law provides.

"For delay in making shipment·or delivery as specified, occurring through the fulfillment of government contracts, or through fire, strikes, or labor difficulties, or failure of governmental agencies to supply wheat, acts of carriers, or similar causes beyond the control of the seller, the seller is not responsible."

On October 26, 1917, defendant wrote Kingman Mills:

"Please forward another car of flour at once and keep ·tracer after it, as the car of flour shipped October 15th has not yet arrived." (This car of flour mentioned as shipped on the 15th of October was on another order and contract.)

On November 3, 1917, Kingman Mills wrote defendant:

"Replying to yours of the 26th, will advise that we immediately asked receiving road to wire tracer on your last car (this car ordered on different contract) shipped October 15, and hope it has reached you before this. We will get your next car out just as soon as it is possible to secure a car to load same. We are practically shut down at the present time for want of cars to move our goods, and it is causing our customers a great deal of inconvenience on account of this matter. We assure you that we are just as anxious to get your goods to rolling as you are and will do everything in our power to hasten shipments."

The result of this correspondence was that on October 18, 1917, Kingman Mills sold the defendant three carloads of flour, to be delivered within 30 days, and providing that the order for shipping should be given within 15 days of the date of the sale, and that up-

on receiving such shipping orders the Kingman Mills had, at its option, the time remaining of the 30 days in which to make the shipment, and upon failure to give such shipping order, or to receive the flour if shipped, the defendant became liable to the Kingman Mills, as liquidated damages, in the sum of 25 cents per barrel for each barrel of flour mentioned in the contract. The letter of the defendant, of October 26th, which was within 15 days of the making of such contract, was, in effect, an order to ship one carload of flour, and the Kingman Mills had until November 18th to execute this order. The letter written by Kingman Mills, November 3d, was to the effect that it would execute this order as soon as practicable.

On November 7, 1917, defendant wrote Kingman Mills:

"Replying to your recent letter, cancel our order placed with you, as you stated that it was impossible to get cars for prompt shipment, and being in need of same we ordered elsewhere."

[1] Kingman Mills was under no obligation, under said contract, to make prompt shipment of said order, except that the same should be made before November 18th, and its letter of November 3d indicated that it would comply with the contract in this respect. It being expressly provided in the contract that the buyer could not cancel the same, except for reasons therein stated, the defendant's letter of November 17th did not amount, in law, to a cancellation of the contract, but it was a cancellation of its order to ship. This left the matter without any order of shipment on the part of defendants, and, under the contract, no such order being given, the buyer became responsible to the seller for 25 cents per barrel on each barrel mentioned in the contract.

On November 9, 1917, Kingman Mills wrote defendant:

"Not having heard from you in reply to letter and message, we must ask that you advise us definitely when you want us to ship your flour. The contract time has almost expired, and, as stated before, the government does not allow us to cancel orders and insists upon all orders being sent according to contract. We have another order to go into your neighborhood, and, as stated before, we can load you in car with another party, 210 barrels as heretofore. The government requires all mills to load cars to at least 60,000 pounds, and if you prefer to have your contract come in two carloads 60,000, we will be glad to furnish it that way. In any event, we must know definitely by return mail as to your wishes, for, as stated, we cannot cancel the contract, and, if you refuse to take same, we will have no alternative but to look to you for our loss in accordance with the Administration contract."

On November 16, 1917, Kingman Mills wired defendant:

"Think can get car for Monday, so can double load giving you forty thousand pounds, advise."

On November 17, 1917, defendant wrote Kingman Mills:

"Replying to your telegram of the 16th inst., we beg to inform you that you did not fill your specifications on our order given you for three cars as per government contract, hence we are asking twenty-five cents per barrel for stated order. * * *"

This closed the correspondence between the parties. The time of shipment expired on November 18th. The defendant had indicated, by letters and telegrams above referred to, that he would not give any shipping order or receive the flour. The contract above referred to was assigned to appellant, Chas. F. Rock.

Upon conclusion of the testimony as above set out, the defendant asked the court to peremptorily instruct the jury to return a verdict in his behalf, which was done, and judgment was entered accordingly.

[2] We do not understand upon what theory the court gave this instruction, except that it appears from the testimony that on account of government regulations there was no change in the market price of flour between the time when the contract was made and when it was breached. Such difference would ordinarily be the measure of damages, but it is permissible for parties to a contract to stipulate liquidated damages, and the same is binding upon the parties and will furnish the measure of damages, if it appears that it was fairly estimated between the parties, and was intended to be in lieu of such damages as might otherwise be shown. Collier v. Betterton, 87 Tex. 440, 29 S. W. 468; Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Foos Engine Co. v. Fairview L. & C. Co., 185 S. W. 383; Orenbaum v. Sowell, 153 S. W. 905; Reinhardt v. Borders, 184 S. W. 791; Halff v. O'Connor, 14 Tex. Civ. App. 191, 37 S. W. 238.

The agreement as to payment of 25 cents per barrel as entry charges, in all respects, complies, under the facts of this case, with the requirements of law that such sum should be taken as liquidated damages and not as penalty. The case was fully developed as to the facts, and, under such facts, the court should have instructed a verdict for the plaintiff, and we here now enter the judgment which the lower court should have rendered.

Judgment of the trial court is reversed, and here rendered for the plaintiff for the amount sued for.

Reversed and rendered.

BRADY, J. I concur in the reversal of the case, but not in rendering judgment for appellant. In my opinion, under the facts shown by the evidence, the case is one for the jury, and I may write my reasons later.

### On Motion for Rehearing.

JENKINS, J. [3] Upon further consideration, we have concluded that there is an issue of fact in this case as to whether the Kingman Mills were able and willing to comply with their contract, which issue should be determined by a jury. For this reason, the motion of appellee for a rehearing is granted, and this cause is reversed and remanded.

Motion granted.