### R. H. Kirk v. Brazos County.
#### No. 2651.

**Evidence.**—The rule which excludes parol testimony when offered to vary the terms of a written contract·will not prevent the introduction of parol evidence when offered to identify the subject matter to which the written contract refers, and thus to make plain that which was in the minds of the contracting parties. Hence in a written contract between a county and the superintendent of its manual labor and poor house farm for the support of the blind and helpless paupers "and for *all other paupers,*" it is competent to show by parol testimony that by the term "all other paupers" was meant not poor persons who received some aid from the county and who by partially sustaining themselves were not kept at the poor house farm, but that it referred to poor persons who were entirely dependent for support on the county, and who were to receive it at the poor house farm. To interpret the meaning of the terms used evidence showing the former notorious action of the county as to the class of persons placed under the superintendent who were entirely dependent on the county, and its action regarding other paupers only partially supported by the county, was admissible.

Appeal from Brazos.   Tried below before Hon. John N. Henderson. The opinion states the case.

*J. D. Thomas,* for Kirk.—When the Commissioners Court procured other parties to support twenty-eight of the paupers included in Kirk's contract, at three dollars each per month, the county became bound to

pay Kirk the amount agreed upon for each of these paupers—seven dollars per month, less the actual cost of supporting them. Rev. Stats., arts. 1514, 1527; Bastrop County v. Hearne, 70 Texas, 563; Beard v. City of Decatur, 64 Texas, 7; Watrous v. McKie, 54 Texas, 65, 71; Wooters v. I. & G. N. R. R., 54 Texas, 294; Self v. King, 28 Texas, 553; Jackson v. Stockbridge, 29 Texas, 395; Donley v. Bush, 44 Texas, 7.

The county seeks to set up what it alleges as the understanding and intention of the parties in direct conflict with their language in their written contract, and not what the language of their contract means in the light of the surrounding circumstances. Watrous v. McKie, 54 Texas, 65, 71; Wooters v. I. & G. N. R. R., 54 Texas, 294; Self v. King, 28 Texas, 554.

*Ford & Doremus*, for Brazos County.—Although the rules of evidence forbid parol testimony to contradict or vary the terms of a written contract, or to substitute verbal language used at the time or prior to the time of making it for the written language of the contract, they do permit proof of the circumstances under which the contract was made, the surroundings of the parties, their relations to each other and to the subject matter of the contract, to enable the court called upon to interpret it to put itself in the place and read it from the standpoint of the parties to it, the better to understand the terms employed in it and to arrive at the intention of the parties and give effect to it; and the court should have permitted the pleadings stricken out by it and proof of the facts alleged so that it might itself be furnished in interpreting it with all the light possessed by the parties making it at the time of its execution. Walker v. Armstrong, 54 Texas, 613; Reed v. Merchants Mut. Ins. Co., 5 Otto, 23; United States v. Peck, 12 Otto, 64; Bradley v. Packet Co., 13 Peters, 89; Taylor on Ev., secs. 1194–1198; Coquellard v. Hovey, 37 N. W. Rep., 479.

The pleadings stricken out stated facts which developed a latent ambiguity in the contract between the county and Kirk, and the court should have permitted the facts showing such ambiguity to be averred in the pleadings and to be established and explained by parol evidence. Hamman v. Keigwin, 39 Texas, 45; Manchester Paper Co. v. Moon, 10 N. E. Rep., 861; Coquellard v. Hovey, 37 N. W. Rep., 481; 1 Phil. Ev., 531; Roberts on Frauds, 75; 1 Sug. Vend., 181; 3 Dall., 421, note 1; Catlett v. Ins. Co., 1 Wend., 576; Thorington v. Smith, 8 Wall., 1; Atlantic, etc., v. Carolina, etc., 19 Wall., 548; Taylor v. Bland, 60 Texas, 29; Simpson v. Henderson; 1 Moo. & M., 300.

STAYTON, CHIEF JUSTICE.—In accordance with an order of the Commissioners Court previously made the county judge of Brazos County on September 20, 1886, advertised as follows: "Sealed proposals will be

received at the office of the county clerk up to the 8th day of November, 1886, for a superintendent of the manual·labor and poor house farm for the year 1887.

"Bids will state:

"1. How much they will give for the land, 65 or 70 acres.

"2. How much per head for taking care of the blind and helpless paupers per month.

"3. How much per head for taking care of all other paupers per month over six years of age.

"4. How much per head for all under six years of age except children not over 1 year of age if it has a mother to take care of it." * * *

On November 8, 1886, on a bid made by R. H. Kirk, plaintiff, the Commissioners Court by an order on its minutes awarded the poor farm to him on the following terms: Kirk was to pay the county $4 per acre for the cultivated land, say 70 acres, and the county was to pay Kirk $8 per month for caring for the blind and helpless paupers, and $7 per month for all other paupers over 6 years of age, and $2.50 per month for all paupers under 6 years of age and over 1, and no charge to be made for paupers under 1 year of age having a mother.

This action was brought by Kirk, who alleges that he took possession of the poor farm January 1, 1887, under his contract, but the county refused to permit him to care for or have charge of 31 of the paupers for the keeping of whom he should have had $7 per month.

He set out a list of the 31 paupers, specifying the number of months each was a charge upon the county, and claims that he would have supported them at a cost to him of $3 per month, leaving him a net profit of $4 on each per month, aggregating during the year $1306.50, for which he sues.

It was shown that the Commissioners Court by orders entered on the minutes had directed that money be paid for the support of 28 of the persons named in the petition during the year or part of the year 1887.

It was further shown that all persons receiving an entire support from the county were sent to the plaintiff at the poor farm; that those who were not a full charge upon the county, but who were supported in part by their friends, were not sent to the poor farm. The last were the persons named in plaintiff's petition.

The defendant set forth in its answer that the persons receiving a partial support only from the county were not embraced in the contract with plaintiff, and that the contract embraced those only who were entirely supported by the county; that the county had been for many years the owner of a manual labor and poor farm, and it had been its custom to employ each year a superintendent of the farm to manage same, and to receive, support, and take care of such of the poor of the county as the Commissioners Court might send there, and that the contract sued on

had reference to and included this class and no others. That it has also been the custom of the county during this time to aid and assist some others of the poor of said county outside of and away from the poor farm, namely, such as only needed a partial support, and who were able in part to support themselves or had friends or relatives willing to assist them in part, and this class were not embraced in plaintiff's contract or intended to be, and the persons named by plaintiff in his pleadings are those not supported at the poor farm, but are of that class receiving aid outside of the poor farm, and were not included in the contract, and that this plaintiff knew and understood when he made the contract; and that when the contract sued on was entered into, and for many years prior thereto, the county had been assisting in the support of a portion of the poor of the county outside of the poor farm, and this class of paupers were never sent to the poor farm at all, and it was never intended to send them there or understood or intended by plaintiff that they would be sent there.

The court sustained exceptions to so much of the answer as set up these matters, on the ground that proof to sustain the averments would tend to vary the import of the contract evidenced by the proposal for bids, the bid of plaintiff, and its acceptance by the Commissioners Court.

The county further pleaded and proposed to prove that plaintiff had entered into a contract with defendant for the year 1886 to take charge of the paupers of the county, substantially the same as the contract sued on for 1887; that the county sent to the poor farm in 1886 only such paupers as were entirely supported by the county; that the county during the year 1886 supported in part a number of persons who were able to support themselves in part, and who were never sent to the poor farm, and for whose support plaintiff was paid nothing and claimed nothing, and that plaintiff never claimed that they were embraced in his contract, or that the county should allow him to board or care for them; but exceptions were sustained to the plea and the evidence excluded when offered under the general issue.

There was a trial and judgment in favor of plaintiff for $106.50, from which both parties prosecute appeals.

The plaintiff bases his case upon the proposition that under the words "all other paupers" are embraced all persons to whom the county was giving aid to any extent, and that for all such he is entitled to recover as claimed in his petition.

That it is not admissible to vary the terms of a written instrument by parol evidence is well settled, but this rule does not forbid the introduction of evidence, where language used in a contract is ambiguous, to enable a court to understand what meaning the contracting parties attached to words used. "Thus for the purpose of identifying the subject matter to which the written contract relates, parol testimony of that which was

in the minds of the parties, and to which their attention was directed at the time, may be given."

In the application for bids, on which the plaintiff acted, it would not be contended that by the words "all other paupers" the County Commissioners Court intended to invite bids for the support of all persons who might be embraced in the language, or that he intended or understood when making bids that he was agreeing to support all persons who might be thus included, for the words would include all persons who could be classed as paupers, without reference to their residences or the obligation of Brazos County to take care of them.

He was invited to and did make a bid for the position of superintendent of the "manual labor and poor house farm" for the year 1887, and for the use of the farm. The purpose for which that was used and his duties in connection with it would seem to be proper matters of inquiry in ascertaining what the parties intended by the use of the terms used in the contract.

Was it intended that the plaintiff should appropriate the "manual labor and poor house farm" to a purpose foreign to that for which it had been acquired, and that his duties as superintendent should not be confined to its management and the care and control of such persons as the County Commissioners Court might find it necessary to send there to be supported and cared for? The facts pleaded and proposed to be proved would have illustrated the meaning of the word "paupers" used in the application for bids.

In a general sense a person may be said to be a "pauper" who is very poor, but this is evidently not the sense in which the parties to the contract before us understood it.

They evidently understood it to mean persons so indigent as to be dependent on the county for support, but whether in the use of the word the parties intended to embrace all to whom the county gave any aid whatever, or only to embrace that class who were without homes and for this reason had to be furnished with a shelter as well as an entire support, was a legitimate subject of inquiry.

The past course pursued by the county, if notorious, in reference to the class of persons placed under the control of the superintendent of the manual labor and poor house farm, and there given an entire support, as well as the course pursued at the time the contract was made, would well illustrate what the contracting parties understood to be meant by the words "taking care of all other paupers per month."

The contract shows that the plaintiff was to furnish good and wholesome food for all persons included in his contract; was to see that their bedding was kept neat and clean; to wait on the sick and to administer to them medicines according to the directions of the physician employed

by the county to attend to the sick at the poor farm; but the county was to furnish their clothing and bedding.

What class of persons did the plaintiff and the county authorities understand at the time the contract was made would be entirely fed and cared for by the superintendent? That class and that alone is the one embraced in the contract. Did they understand that persons sent to the poor farm because they had no shelter of their own or because no friend offered a shelter, who had no means from which to furnish themselves even a partial support, should be fed and cared for at the poor farm by the superintendent at a stipulated price per month? Of this no doubt would arise. Did they understand that it should be the duty of the plaintiff under the contract to feed and care for those who had homes of their own or were sheltered by friends, to whom, however, it might become necessary for the county to extend some slight aid from time to time?

If upon the face of the contract doubt should exist as to whether the class last named were understood by the parties to be classed as " paupers" to whom the contract applied, then the matters pleaded and proposed to be proved would have shown clearly in what sense the word "paupers" was used and understood by the parties to be used, and the court below erred in sustaining exceptions to so much of the defendant's answer. The proposition made by counsel for plaintiff is that under the contract it was his right to full compensation for every person to whom the county gave any aid, whether they were sent to the poor farm or not or whether their condition was such as to have made it proper or necessary to have sent them there.

As an illustration of plaintiff's claims he asserts a claim for $84 for board and care of Mrs. Royal for the entire year, but there is no pretense that he ever furnished her anything whatever, but he says it was his right to do so. She was a lady with several children, a widow, who had a home, whether owned or rented does not appear, to whom the county for three months furnished $7.50 to enable her to get her crops in such condition that she could realize something therefrom for the support of herself and children.

Did the parties understand the persons situated as was Mrs. Royal should be sent to the poor farm? If she ought to have been sent there, what should have been done with the children dependent upon her? Why not claim for boarding them as well as their mother?

For the errors in the proceedings noticed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 15, 1889.