# Chaplin, Appellant, *v.* Griffin.

*Contracts—Construction—Agreement to purchase stock—"Pro rata"—Parol evidence rule—Affidavit of defense—Sufficiency.*

1. The term "pro rata" means in proportion; proportionately; according to the measure, interest, or liability of each. As applied to persons it never means equality or an equal division, but necessarily implies an unequal division as between different persons. It has no meaning unless referable to some rule or standard.

2. The rule that where parties finally put their contract in writing an independent and contemporaneous oral agreement relating to the subject-matter which is inconsistent with the terms of the instrument cannot be given effect to vary or modify its purpose, does not conflict with the rule that for the purpose of interpretation and application of the terms of the contract evidence showing the subject-matter with which the parties dealt and the object which they sought to accomplish as shown by the preceding negotiations, is competent, not to vary what has been reduced to writing, but to aid in its construction and to make plain in what sense the parties used and understood the language they employed.

3. A written contract entered into between a trustee and eight stockholders in a corporation recited the ownership of such shares which were then in the name of the trustee, but disclosed nothing to indicate that the shares were owned in any other than equal amounts by the parties to the agreement; authorized the trustee to pledge the stock for a loan until a majority should desire to dissolve the pool; and provided that the owners "will take up their pro rata shares" of the loan and pay the amount due on the stock when the pool was dissolved. In an action by the trustee against one of the eight members after the dissolution of the pool to recover one-eighth of the loan the affidavit of defense set up a parol understanding that the pro rata liability was to be based on the number of shares in the company which each of the parties then separately owned; that defendant owned less than one-eighth of the shares in the pool, and averred tender of plaintiff's share of the loan so computed. The lower court discharged plaintiff's rule for judgment for want of a sufficient affidavit of defense. *Held,* no error.

Argued Oct. 27, 1915. Appeal, No. 209, Oct. T., 1915, by plaintiff, from order of C. P. Allegheny Co., Oct. T.,

1914, No. 1372, discharging the rule of plaintiff for judgment for want of a sufficient affidavit of defense, in case of James C. Chaplin, Trustee for himself, E. H. Jennings, John A. Bell, J. C. Reilly, James S. Kuhn, J. D. Callery, F. A. Griffin and William Flinn v. F. A. Griffin. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit on written contract.   Before SWEARINGEN, J.

From the record it appeared that plaintiff's claim was based upon the following agreement:

"EXHIBIT 'A'—MEMORANDUM OF AGREEMENT

Between James C. Chaplin, party of the first part (hereinafter called the 'Trustee') and William Flinn, Jas. S. Kuhn, Jas. D. Callery, E. H. Jennings, Jas. C. Chaplin, F. A. Griffin, John A. Bell and John C. Reilly, parties of the second part.

"Whereas, the parties of the second part have purchased and are the owners of three hundred and ten (310) shares of the capital stock of The Colonial Trust Company, which shares are in the name of James C, Chaplin, as trustee, said stock having been purchased at four hundred ($400.00) dollars per share; and

"Whereas, for the purpose of carrying said stock in a pool until such time as the parties of the second part, or a majority of them, together with the party of the first part, may desire to dissolve said pool or to pro rate said stock, and

"Whereas, the party of the first part has consented to act as trustee for himself and the parties of the second part in this transaction, and

"Whereas, the parties of the second part do authorize the party of the first part to negotiate a loan or loans for the purpose of carrying said stock, and

"Whereas, the party of the first part is willing to negotiate said loan or loans.

"Now the condition of this obligation is such

"That for and in consideration of one ($1.00) dollar paid by the parties of the second part to the party of the first part, the receipt of which is hereby acknowledged, the party of the first part will—

"First.   Negotiate a loan or loans with the Diamond National Bank or some other banking institution to the aggregate amount of the stock purchased, to wit: one hundred twenty-four thousand ($124,000.00) dollars, and pledge thereon as collateral security for said loan or loans the three hundred and ten (310) shares of said stock.

"Second.   That all dividends on said stock shall be applied by the party of the first part to the interest on said loan or loans and should there be a surplus, to pro rate to the parties of the second part said surplus.

"Third.   That upon demand by the parties of the second part upon the party of the first part, the party of the first part will distribute pro rata to himself and to the parties of the second part the stock above referred to, upon payment by the parties hereto of the amount due thereon both as to principal and interest.

"The parties of the second part agree—

"First.   That should the party of the first part be unable at any time to secure loans upon said stock, that they will take up their pro rata shares of said stock and pay to the party of the first part the amount due thereon and by him applied to the liquidation of said loan or loans.

"Second.   Should the dividends paid or declared on said stock be insufficient to pay the interest on said loan or loans, the parties of the second part agree to pay pro rata their share of the deficiency.

"This agreement is made to bind the heirs, executors and administrators of the parties of the first and second parts.

"Witness the hands and seals of the parties hereto this 15th day of May, A. D. 1906."

On May 17, 1906, two days after the execution of the foregoing agreement, the plaintiff, in pursuance of it, procured a loan of $124,000.00 from a bank in Pittsburgh, and pledged the 310 shares of stock as collateral security. The interest on the said loan, up to the time it was called by the bank, amounted to $9,616.25 more than the dividends that had been received by the plaintiff on the stock. When the loan was called a majority of the eight signers to the agreement signified their desire to dissolve the pool, and plaintiff demanded of the defendant that he take up one-eighth of the 310 shares of the Colonial Trust Company stock and pay one-eighth of the said loan and accrued interest thereon, amounting in the aggregate to $16,702.03. This demand was made because plaintiff contended that defendant had assumed one-eighth of the obligation imposed by the agreement. After the defendant had refused to comply with the demand made on him this action was brought, and to plaintiff's statement the following affidavit of defense was filed:

"The defendant, F. A. Griffin, denies that he is indebted to the plaintiff as trustee, or otherwise, in the sum of sixteen thousand seven hundred two and 3-100 ($16,702.03) dollars, with interest thereon, or in any other sum whatsoever, except as hereinafter stated.

"I admit that on or about the 17th day of May, 1906, I signed the agreement, a copy of which is attached to the plaintiffs' statement of claim and marked Exhibit 'A.'

"I further admit that the plaintiff, on or about the 17th day of May, 1906, procured a loan from the Diamond National Bank in the sum of $124,000.00 and pledged as collateral security therefor the said 310 shares of the stock of the Colonial Trust Company.

"I admit that under the terms of said agreement, I became liable for my pro rata share of the principal and

interest due on said loan for which said stock is pledged, but I deny that such pro rata share was or is one-eighth part thereof. I aver that at the time of the execution of the said agreement, Exhibit 'A,' it was understood and agreed that the pro rata shares for which the signers thereof became liable were based upon the number of shares of their respective holdings of the capital stock of the Colonial Trust Company, and that such liability was not to be based or pro rated upon the number of signers to the said agreement.

"I aver that said agreement, Exhibit 'A,' arose out of and was executed under the following circumstances, viz: At the time of the execution of said agreement, and for some time prior thereto, all of the persons signing said agreement were directors and also stockholders and members of the executive committee, and some of them officers, of the Colonial Trust Company. Some time prior to the signing of said agreement, there remained in the treasury of the Colonial Trust Company unsold some 500 shares of the capital stock of the Colonial Trust Company, and the directors of said trust company were desirous of selling said treasury stock. Pursuant to a resolution of the board of directors, the various stockholders of the said Colonial Trust Company were asked to subscribe for said treasury stock at $400.00 per share, and each stockholder was authorized to take his pro rata portion of said treasury stock based upon the number of shares of stock which he then held in said Colonial Trust Company. After all the said stockholders of the Colonial Trust Company had subscribed for such shares of said treasury stock as they desired, there remained unsold 310 shares. The directors of the said Colonial Trust Company who subsequently signed the said agreement, Exhibit 'A,' were anxious that these remaining 310 shares of stock should also be sold so that the trust company could have the use of the money, and it was proposed by defendant to the signers of said agreement at a meeting of the said executive committee, that

the various members should subscribe for this stock pro rata, and this defendant then and there offered to purchase and pay for his pro rata share of said stock in case the other members of the executive committee, who later became signers to said agreement, would also take and pay for their pro rata share of said remaining stock, the pro rata shares of each one to be based upon the number of shares of the stock of the said Colonial Trust Company which he then held, on the same basis as all the shareholders of the said Colonial Trust Company had been permitted to subscribe for said treasury stock. The proposition made by defendant, that each of the said members of the board of directors or executive committee should take and pay for his pro rata share of said remaining treasury stock, was apparently held for further consideration, without any definite action at that time. But soon after, as a result of the said proposition and pursuant thereto, the plaintiff in this case, Mr. James C. Chaplin, prepared and presented to defendant the agreement marked Exhibit 'A,' and asked the defendant to sign the same. Neither at the time of signing the said agreement nor at any other time was any suggestion of equal liability of the signers made, nor any suggestion of any other liability than the pro rata liability based on ownership of the stock, as had been proposed by this defendant, and this defendant understood, and on information and belief avers and expects to be able to prove, that it was understood by all of the other signers thereof that the pro rata obligation and liability of each subscriber thereto, as referred to in said agreement, was to be based upon the number of shares of his holdings of stock in the said Colonial Trust Company, and not otherwise.

"Defendant avers at the time of the signing of said agreement, Exhibit 'A,' he was the owner of 150 shares of the capital stock of the said Colonial Trust Company. Defendant also avers, on information and belief and expects to be able to prove at the trial of the cause, that

the other subscribers to said agreement owned the following number of shares of said stock:

"John A. Bell, ............ 617 shares;
"James S. Kuhn, .......... 239 "
"J. D. Callery, ........... 670 "
"John C. Reilly, .......... 413 "
"J. C. Chaplin, ........... 477 "
"William Flinn, ...........1,141 "

and that E. H. Jennings owned or controlled, and fully represented in signing said agreement, approximately 3,577 shares of said stock.

"Based upon the aforesaid holdings of stock, the pro rata share of the obligation and liability for said loan and interest made by plaintiff under said agreement, Exhibit 'A,' for which defendant is liable is approximately two per cent. (2%) of the total indebtedness, which amount this defendant is willing to pay upon delivery to him by the plaintiff of a like pro rata share of the said 310 shares of stock.

"Defendant therefore denies that he is indebted to the plaintiff in any other amount except as herein stated, which indebtedness he is, and always has been, ready and willing to pay on delivery to him of the pro rata share of said stock, and therefore asks that this suit be dismissed at the plaintiffs' cost."

Further facts appear by the opinion of the Supreme Court.

The court discharged the rule for judgment for want of a sufficient affidavit of defense. Plaintiff appealed.

*Error assigned* was in discharging rule for judgment for want of a sufficient affidavit of defense.

*Thomas Patterson,* of *Patterson, Crawford, Miller and Arensberg,* for appellant.—Parol evidence is inadmissible to vary the terms of a written contract where there is no allegation of fraud, accident or mistake: Book v.

New Castle Wire Nail Co., 151 Pa. 499; Fry v. National Glass Co., 207 Pa. 505.

The term "proportion" is synonymous with "pro rata": Hager v. McDonald, 65 Fed. Rep. 202.

*John M. Freeman,* of *Watson & Freeman,* with him *Harry F. Stambaugh,* and *Felix B. Snowdon,* for appellee.—The term "pro rata" when applied to a division of property imports an unequal division on a comparative or proportionate basis, and was so used here: Brombacher v. Berking, 57 N. J. Eq. 251; Home Insurance Co. v. Continental Ins. Co., 180 N. Y. 389; Electric Co. of America v. Edison Electric Illuminating Co., 200 Pa. 516.

The rule prohibiting the admission of parol evidence to vary or modify a written agreement has no application here: Wilson v. Wernwag, 217 Pa. 82; Perry v. Payne, 217 Pa. 252; Centenary Church v. Clime, 116 Pa. 146; Bole v. Fire Insurance Co., 159 Pa. 53; Thatcher v. West Chester St. Ry. Co., 35 Pa. Superior Ct. 615.

OPINION BY MR. CHIEF JUSTICE BROWN, January 3, 1916:

The words "pro rata" have a clearly defined and well understood meaning. "Pro rata: In proportion; proportionately; according to the share, interest or liability of each": Webster's International Dictionary. "Pro rata: Proportionately; according to a certain rate, percentage, or proportion": Black's Law Dictionary. In the agreement which is the basis of any claim the appellant has against the appellee, it is first provided that the stock is to be carried until such time as a majority of the signers may desire to dissolve the pool or "pro rate said stock"; the trustee is to apply the dividends received on it to the payment of interest on the loan and "pro rate" any surplus among the eight persons who signed the agreement as parties of the second part. Upon demand by them the party of the first part is to dis-

tribute among them the said stock "pro rata," and, should he at any time be unable to secure loans upon it, the parties of the second part agree to take up their "pro rata" shares of it; and a further agreement is that, if the dividends received by the appellant should be insufficient to pay the interest on the loan or loans, the parties of the second part agree to pay their "pro rata" share of the deficiency. These words, "pro rate" and "pro rata," used five times in the brief agreement, are to be given their plain and universally-understood meaning as fixing the liability of each of the eight parties of the second part to the agreement, on the basis of his interest in its subject-matter. If it was the intention of the parties to it that the liability of each was to be the same, such liability could readily, and would naturally, have been fixed by a simple declaration that each one of them was to share equally with the others in the distribution of the stock and be equally liable for the amount of the loan; but, instead of such a provision, there is the studied repetition of an intention that there should not be equal liability, which is never contemplated by the use of the words "pro rate" or "pro rata." They contemplate a just proportion of liability upon an equitable basis.

While it clearly appears from the face of the agreement that the liability of each of the subscribers to it was to be on some proportionate basis other than one-eighth, it cannot be ascertained from the agreement what that basis was to be, and it was, therefore, competent for the defendant to aver in his affidavit of defense the sense in which all the parties to the agreement, at the time it was executed, understood and used the words "pro rate" and "pro rata." This is not contradicting or varing the terms of the agreement or changing the liability imposed by it; it is merely explaining the intention of the parties to it as to what was to be the basis of the pro rata liability of each. Parol testimony cannot be received to change or impair that liability,

but, in the absence of anything in the agreement indicating what was the basis of it, parol testimony is admissible to show what was intended by the parties to the agreement to be the basis of it. The term "pro rata" "means—in proportion: in due proportion: Burrill Law Dic. According to the rate, proportion or allowance: Bouv. Law Dic. It never means, as applied to persons, equality, or an equal division.......The term used necessarily implies an unequal division, as between different persons": Note to Rosenberg v. Frank, 19 Amer. L. Reg. (N. S.), 355. " 'Pro rata' means according to a measure which fixes proportions. It has no meaning unless referable to some rule or standard": Brombacher, et al., v. Berking, et al., 56 N. J. Eq. 253. "The rule, that where the parties finally put their contract in writing an independent contemporaneous oral agreement relating to the subject-matter which is inconsistent with the terms of the instrument, cannot be given effect to vary or modify its purpose, does not, however, conflict with another well-settled rule to the effect that for the purposes of interpretation and application of the terms of a contract, evidence showing the subject-matter with which the parties dealt, and the object which they sought to accomplish, as shown by the preceding negotiation, is competent, not to vary what has been reduced to writing, but to aid in its construction and to make plain in what sense the parties used and understood the language they employed": 2 Elliot on Contracts, Sec. 1621. "When a matter necessarily pertaining to the subject of the contract is unmentioned therein, parol testimony is admissible to ascertain the meaning. It is a rule of interpretation that the intention of the parties to a contract is to be ascertained by applying its terms to the subject-matter. The admission of parol testimony for such purpose does not infringe upon the rule which makes a written instrument the proper and only evidence of the agreement contained in it......The rule of law which forbids parol evidence to be received to contradict or vary a

written instrument has reference to the terms of the writing. Evidence to explain the subject-matter of an agreement is essentially different from that which varies the terms in which the contract is conceived: Barnhart v. Riddle, 29 Pa. 92. Parol evidence is not admissible to alter or contradict what is written, but is admissible to explain and define the subject of a written agreement: Gould v. Lee, 55 Pa. 99''; Centenary M. E. Church v. Clime, 116 Pa. 146.

With the foregoing rule clearly applicable to the written agreement before us, the material averments in the affidavit of defense—which we must assume the defendant will be able to sustain on the trial of the case— are as follows: At the time the agreement of May 15, 1907, was signed, the subscribers to it were stockholders, directors and members of the executive committee, and some of them officers, of the Colonial Trust Company. The 310 shares of stock were treasury stock, remaining unsubscribed for after all other stockholders had been given an opportunity to subscribe for them, and the directors were anxious to sell them, that the trust company might have the use of the money. Pursuant to a resolution of the directors, the stockholders of the company had been requested to subscribe pro rata for all of the treasury stock, of which the 310 shares were a part. The defendant proposed, at a meeting of the executive committee of the trust company, composed of the eight signers to the agreement, that the members present should subscribe for this stock pro rata. At that meeting the defendant offered to purchase and pay for his pro rata share of the stock in case the other members of the executive committee would do the same, the pro rata of each one to be based on the number of shares of capital stock of the said trust company which he then held, just as the other stockholders had been requested and permitted to subscribe. Soon after this proposition, and pursuant thereto, the plaintiff prepared the agreement and asked the defendant to sign it. Neither at the time

of signing it, nor at any other time, was any suggestion made of equal liability of the signers, nor any suggestion of any other liability than a pro rata one, based on ownership of the stock, and it was understood by all of the signers of the agreement that the pro rata obligation and liability of each subscriber thereto were based on the number of shares of the stock in the said Colonial Trust Company held by him, and not otherwise, varying from 150 shares, held by the defendant, to 3,557 shares, held by E. H. Jennings, another party to the agreement.

To have held that the foregoing averments in the affidavit of defense were insufficient to prevent the entry of judgment for the plaintiff would have been palpable error. The written agreement was executed for the purpose of imposing a pro rata liability upon each one of the parties signing it, but it is not self-interpreting as to the basis of such liability. It is not, however, on that account to be given an effect never intended by those who executed it, if the averments in the affidavit of defense are taken to be true, as they must be, in determining whether they set forth a good defense. The agreement is the evidence of what the parties to it agreed to do, but their manifest intention of a mere pro rata liability cannot be given effect unless it be shown what they all understood and agreed was to be the basis of such liability. In showing this by parol testimony, the written agreement is not varied nor contradicted, but simply explained, that it may be carried into effect as the parties to it intended.

The appeal is dismissed and the order of the court below, discharging the rule for judgment for want of a sufficient affidavit of defense, is affirmed.