GARRARD v. CANTRELL et al.   (No. 1760.)

(Court of Civil Appeals of Texas.   Amarillo. March 2, 1921.   Rehearing Denied April. 13, 1921.)

1. Mines and minerals ⬚➔74—Agreement to sell a lease sufficient to identify pre-existing lease.

A contract for the sale of an oil and gas lease, which described the instrument as a commercial lease, providing for one-eighth of the royalty to be paid to the landowner, is sufficiently definite to sustain an action for breach; it appearing that the land had been leased on the ordinary producer's form, it being immaterial in such case that the contract did not contain provisions as to the terms, such as would be necessary if there was no existing lease.

2. Mines and minerals ⬚➔74 — One not the owner, but having contract for lease where he contracted to sell it, may insist on his rights under the contract to sell.

Though plaintiff was not the owner of an oil and gas lease at the time when he contracted for its sale, yet, where he had a contract with the owner for the sale thereof, he was such a bona fide contractor as would entitle him to insist on his rights under the contract for the sale of the lease.

3. Appeal and error ⬚➔643(5) — Objection to discrepancy in dates of certificate to transcript held too late.

Where it was apparent that a discrepancy in the clerk's certificate to the transcript was the result of some clerical error, an objection to the consideration of the appeal on that ground comes too late, under rules 8 and 9 for the Courts of Civil Appeals (142 S. W. xi).

On Motion for Rehearing.

4. Damages ⬚➔81—Agreement that, for breach of contract for purchase of oil and gas lease, cash payment should be forfeited, valid as one for liquidated damages.

A provision in a contract for the sale of oil and gas lease that the initial payment of $10,-000, which was to be deposited in escrow, should be forfeited to the seller in the event of the buyer's nonperformance, is one for liquidated damages, and hence it is unnecessary, in order for the buyer to recover, for him to show actual damages.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by B. E. Garrard against J. P. Cantrell and others. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, for appellant.

Kay, Akin & Kenley and Bullington, Boone, Humphrey & Hoffman, all of Wichita Falls, and Miller & Miller, of Fort Worth, for appellees.

BOYCE, J. On the 3d day of February, 1919, the plaintiff, B. E. Garrard, and the defendant J. P. Cantrell and his associates, made an agreement by the terms of which the said Garrard agreed to sell to the said Cantrell and associates "an oil and gas lease" on 20 acres of land in Wichita county, Tex. The land to which the lease was to apply was particularly described and provision made for the examination of the title and payment of the consideration, $50,000, upon approval of the title. $10,000 was deposited in a bank at Wichita Falls, in escrow, to be paid as a part of the consideration. The contract provided that in case the said Cantrell and associates should make default in the performance of the contract the $10,000 should be paid to Garrard, as damages. The only description of the terms of the lease to be sold was contained in this language in the contract:

"A lease or an assignment of a lease is hereby proposed to be sold, what is known as a commercial lease, providing for one eighth royalty to the landowner."

Garrard brought this suit against the defendants Cantrell and others and the bank, to recover the $10,000 deposited in the bank, alleging that he had performed his part of the contract, and the defendants had refused to accept the assignment of the lease tendered in pursuance to the terms of the contract. The defendants answered that the contract was void for uncertainty, in that the lease which the plaintiffs agreed in said contract to sell to the defendant was not sufficiently described in the contract to identify it. A trial before the court resulted in judgment for the defendants.

It was shown on the trial that one Young was, at the time of the execution of the contract between the plaintiff and defendant, the owner of an oil and gas lease on the said twenty acres of land. This lease was dated September 28, 1918, and extended for a term of three years from said date, "and as long thereafter as oil or gas, or either of them, is produced from said land." By its terms the lessee agreed, first, to deliver to the lessor one eighth of all oil produced and saved from the premises; second, to pay to the lessor $300 per year royalty on each gas well; third, to pay royalty of $50 per annum where gas should be produced from any oil well for the manufacture of casing head gas. It was further agreed that, if no well should be commenced on the land before April 1, 1919, the lease should terminate unless the lessee should pay to the credit of the lessor at a bank in Marshall, Mo., the sum of $250; that such payment would preserve the contract against lapse on account of the failure to commence a well for the period of three months; and "in like man-

⬚➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes ·

ner and upon like payments or tender, the commencement of a well may be further deferred for like periods of the same number of months successively." The original lease covered a tract of 80 acres of land, but said lease contract provided that it might be assigned in whole or in part, and that in the event of partial assignment the holder of leases on portions of said land would be liable for payment of only proportional parts of rentals in order to prevent forfeiture.

Tho plaintiff, within the time provided by his contract with defendants, delivered to defendants an abstract of title, which showed that the said Young had good title to said oil and gas lease to the said 20 acres of land, and also within the time provided by the contract tendered to the defendants a proper assignment of the said lease from the said Young to Garrard and from Garrard to the defendants. The said lease so owned by the said Young was on producer's form No. 88. It was shown that this form was in general use in the oil fields in the vicinity of Wichita Falls and was known as a "commercial lease." Other evidence was offered to the effect that by a commercial lease was meant any lease which might be assigned, and which provided for the payment of rentals in lieu of drilling operations. Producer's form No. 88 had a number of blanks in it which were required to be filled in to meet the particular contract as made between a lessor and lessee. These blanks were as to (1) the cash consideration; (2) description of the lands covered by the lease; (3) term of lease; (4) the amount of royalty to be paid each year on each gas well; (5) the amount of royalty to be paid for the gas used from any oil well for the manufacture of casing head gas; (6) the time for the beginning of drilling operations and amounts to be paid from time to time in lieu of drilling operations.

[1] If the contract between the plaintiff and the defendants was for a grant of the lease—that is, one that would fix the terms thereof as between the lessor and lessee—then there could be no question but that it would be void for uncertainty, because a number of essential terms of such a contract, the term of the lease, the rentals, etc., were not named. If the contract is subject to more than one construction in such matter, we should adopt that construction which would uphold it, rather than one which would render it void for uncertainty. We do not construe the contract as being one to create an original lease. It is evident that the parties were not dealing on the assumption that Garrard, as the owner of the entire interest in the land, was to grant to the defendants the leasehold estate therein, but rather on the assumption that the said Garrard owned, or controlled, a leasehold interest in the land, defined by contract between the lessor and the lessee, and proposed thereby to sell such interest so created to the defendants. It seems plain that in such case the contract for sale or assignment of such lease contract might be upheld under a much less definite description of the terms of the lease contract to be sold than if it was contemplated that the leasehold interest itself was to be created by the contract. For instance, a contract to build a house on a particular piece of land would necessarily have to be much more definite in its description than one to sell a house already built thereon. In the case of the sale of the lease contract, as in that of the house, the question is merely one of identity of the subject-matter of the contract.

It is always admissible to admit evidence to place the seeker for the meaning of a writing in the position of the parties to it. If the language of the instrument makes clear the meaning of the parties to one in this position, then there is no such uncertainty in the writing as will avoid it. 17 Cyc. pp. 680–682; Meyers v. Maverick, 28 S. W. 716; Adams v. Maris, 213 S. W. 627 (6 and 7); 9 Enc. of Evidence, p. 396. If one should contract to sell a house on a designated tract of land, and it were shown that there was only one house on the tract, the meaning of the language used in the contract becomes definite and certain. If, however, the vendor owns two houses on the tract, the meaning of the language used is not clear, and it would not be admissible to show by parol which one was intended to be sold. If the vendor owned only one of the houses, and he should contract to sell "my house" on said land, the contract would be made certain by showing which house he owned. Ragsdale v. Mays, 65 Tex. 257. Some of the courts even hold that, if the contract is for a house in a locality of several houses, the showing that the vendor owned only one house in such locality would be sufficient to identify the subject-matter of the contract. The reason given for such holding is that it is to be presumed that a party would not undertake to sell something which he does not own, and the omission of the word "my" from the contract is thus supplied. Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671; Goddard v. Binney, 115 Mass. 450, 15 Am. Rep. 112. This latter holding is, however, not free from conflict. Holmes v. Evans, 48 Miss. 247, 12 Am. Rep. 372. And our own courts would not probably go so far as did the Massachusetts court in the decisions above referred to. Curdy v. Stafford, 88 Tex. 120, 30 S. W. 552; Coker v. Roberts, 71 Tex. 597, 9 S. W. 667; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Watson v. Baker, 71 Tex. 739, 9 S. W. 867.

Now, the evidence in this case shows but one oil and gas lease on the land described in the contract. In fact, there could be but

one such valid lease on the land. This lease was owned, or rather under contract for acquisition, by the plaintiff. These facts we have concluded are sufficient to identify the lease which plaintiff proposed to sell or assign, so that we think the court was in error in holding the contract void for uncertainty. Pierson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Ascarete v. Pfaff, 34 Tex. Civ. App., 375, 78 S. W. 974; Long v. McCauley (Sup.) 3 S. W. 690; Ft. Worth National Bank v. Red River National Bank, 84 Tex. 369, 19 S. W. 517; Kirk v. Brazos County, 73 Tex. 56, 11 S. W. 143. The particular terms of description of the lease, that it was known as a commercial lease, would not in itself be sufficient to identify the contract; but the evidence shows that the lease which was then existing on the land was of this character. So that this description of the lease does not detract from identity resulting from the fact that the parties were evidently contracting with reference to the only existing lease on the land.

[2] The appellee further contends that the judgment may be upheld on the ground that the plaintiff cannot recover, because it is shown that he was not the owner of the lease at the time he contracted to sell it. It is shown that he had a contract with the owner for the purchase thereof, and the facts would not, we think, warrant a finding that the plaintiff was not such a bona fide contractor as would preclude him from insisting on his rights under the contract. Armstrong v. Palmer, 218 S. W. 631, subdivision 7, and authorities.

[3] The appellee objects to the consideration of the case because of a discrepancy in the dates of the clerk's certificate to the transcript and some of the proceedings appearing therein. It is apparent that this discrepancy is the result of some clerical error which could have been. obviated if the objection to the transcript had been made within the time provided by the rules. Appellee's counsel, in his oral presentation of the matter, explained, and the explanation is one that would readily occur to any one familiar with the practice, how this discrepancy probably occurred. We think the objection comes too late. Rules 8 and 9 for Courts of Civil Appeals (142 S. W. xi); St. Louis, I. M. & S. Ry. Co. v. West Bros., 152 S. W. 181; Gutheridge v. Gutheridge, 159 S. W. 452; McLane v. Haydon, 178 S. W. 1197.

The judgment will be reversed, and rendered for the appellant.

## On Motion for Rehearing.

[4] One point raised in the motion for rehearing was not presented on original hearing or discussed in the opinion heretofore rendered; that is, it is now contended that there is no allegation or proof that the plaintiff was actually damaged by the breach of

232 S.W.—58

the contract, and that such allegation and proof are necessary to a recovery. It is a fact that there is no allegation of actual damage flowing from the breach of the contract. The plaintiff's right to recover the $10,000, deposited with the bank was based on the agreement that such sum should be paid him as damages in case of breach of the contract by the defendants. There was proof that at the time of the tender of the assignment of the lease the value of the lease was much less than at the time of the contract and less than the contract price; but, if pleading of damage were necessary, the petition was subject to general demurrer, and proof would not supply the lack of pleading. So it becomes necessary to examine the proposition urged. We construe the contract to evidence an intention that, in case of breach by the vendee, the $10,000 deposited in the bank should be paid to the vendor as liquidated damages. Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; Reinhardt v. Borders, 184 S. W. 791. In such case it is unnecessary for the plaintiff, in order to recover the stipulated sum, to allege and show that actual damages were sustained and the amount thereof. In the case of Eakin v. Scott, supra, it was agreed on the trial that no actual damages were sustained from the breach, and yet the plaintiff was held to be entitled to recover the stipulated damages.

We do not think the case of Collier v. Betterton, 87 Tex. 440, 29 S. W. 467, which is relied on by appellees to support their proposition, sustains them in such matter. The Supreme Court in that case, after having stated that, "although the parties to a contract have named a specified sum of money as liquidated damages for its breach, the courts may in certain cases treat the provision as a penalty, and restrict the recovery to the actual damages which have accrued," attempts to lay down the rules under which this apparent intention of the parties, as expressed in the contract, may be disregarded; and it is first said that, "if the damages be in their very nature uncertain, or the amount indeterminate, the sum specified will be treated as fixing by stipulation the amount of the recovery," and the court then proceeds to discuss the rule, "in cases in which the damages are reasonably capable of ascertainment," and announces this conclusion in reference thereto:

"Therefore the principle would seem to be that; although a sum be named 'as liquidated damages,' the courts will not so treat it, unless it bear such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation by the parties of the compensation to be paid for the prospective loss. If the supposed stipulation greatly exceed the actual loss, if there be no approximation between them, and this be made to appear by the evidence, then, it seems to us, and then only, should the actual damages be the measure of the recovery."

This means, we take it, that the party who seeks to defeat the terms of the contract providing for the payment of a stated sum of money, as agreed damages, should make it appear that the damages which the parties contemplated might result from the breach of the contract were "reasonably capable of ascertainment," and that there was "no approximation" between such contemplated actual damages and the agreed damages fixed by the contract. This conception of the decision has been applied by the Courts of Civil Appeals in a number of later cases, in some of which writs of error were denied by the Supreme Court. Halff v. O'Connor, 14 Tex. Civ. App. 191, 37 S. W. 241; Reinhardt v. Borders, 184 S. W. 791; Kaufman v. Christian-Wathen Lumber Co., 184 S. W. 1048 (5); Dilley & Son v. Wise, 160 S. W. 986. No other construction of the meaning of the decision can harmonize it with the decision of the Supreme Court in the case of Eakin v. Scott, supra, and the opinions in both of these cases were written by the same judge.

The other matters presented in the motion for rehearing were carefully considered on original submission of the case.

The motion for rehearing will be overruled.