## AMERICAN REFINING CO. v. SIMS OIL CO. (No. 11371.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 30, 1926. Rehearing Denied Feb. 27, 1926.)

1. **Evidence** ⬅450(8)—**Contract to purchase oil production, based on "posted market price," held ambiguous, warranting introduction of testimony to show meaning of parties; "market price."**

Term "posted market price," as used in contract for purchase of oil production, based on "posted market price" of a certain company, *held* sufficiently ambiguous to warrant introduction of testimony to show meaning of parties using it; "market price" having no hard and fast meaning.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Price.]

2. **Accord and satisfaction** ⬅7(1)—**Agreement of payee to accept a lesser sum in full satisfaction of a definitely fixed amount is without consideration.**

When one pays sum of money, which is less than amount definitely fixed by his contract as owing to another, there is no consid-

eration to support agreement on part of person receiving payment that same will be accepted in full satisfaction of the debt.

**3. Accord and satisfaction ⊜10(1)—Demand is "unliquidated demand," where it is admitted that one of two specific sums is due, but there is a genuine dispute which is the proper amount.**

Demand is not liquidated, even if it appears something is due, unless it appears how much is due, and, when it is admitted that one of two specific sums is due, but there is a genuine dispute which is the proper amount, demand is unliquidated.

[Ed. Note.—For other definitions, see Words and Phrases, Unliquidated Demand.]

On Motion for Rehearing.

**4. Evidence ⊜461(1) — Uncommunicated intention of party to written contract cannot be considered in determining meaning of terms used in contract.**

Mere secret understanding or intention of one party to a written contract, not communicated or assented to by other party, cannot vary terms of contract, and hence cannot be considered in determining meaning of terms used in written contract on same subject.

**5. Sales ⊜88 — Meaning of words "posted market price," as used in contract for purchase of oil production, based on "posted market price" of certain company, held for jury.**

Whether term "posted market price," as used in contract for purchase of oil production, based on "posted market price" of a certain company, meant what such company paid for oil on the market or price paid by public in open market and posted by such company *held* for jury.

**6. Accord and satisfaction ⊜11(1) — Acceptance of checks in full payment of claims on contract without protest would be binding contract of settlement, if claims were unliquidated.**

Acceptance by plaintiff of checks with memoranda indorsed thereon to effect that they were given in full payment of claims on contract for purchase of oil production without protest or objection by plaintiff would be a binding contract of settlement, if claims were unliquidated.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Sims Oil Company against the American Refining Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, and Carrigan, Britain, Morgan & King, of Wichita Falls, for appellee.

DUNKLIN, J. The Sims Oil Company instituted this suit against the American Refining Company to recover $12,811.52, alleged to be due it on a certain contract made and entered into by and between the parties, by the terms of which the plaintiff agreed to sell, and the defendant agreed to buy, all the oil produced by plaintiff from certain lands leased by it for a period of eight months next ensuing after May 1, 1923, which was the date of the contract.

The contract sued on contained this stipulation:

"The oil received under this division order shall be paid for by the purchaser (American Refining Company) to the party or parties entitled thereto according to the division of interests shown above, at 25 cents (25) per barrel premium over and above the posted market price of Texas Pipe Line Company for the same kind and quality of oil in the particular field in which it is received on the day on which it is received by the purchaser into its custody. Settlements therefor shall be made semimonthly. For the amount due on account of the oil received during the first fifteen (15) days of each calendar month, payment shall be made on or before the 25th day of such month, and for the amount due on account of oil received during the balance of such calendar month payment shall be made on or before the 10th day of next succeeding month."

The record shows that in the drafting of the contract the term "Texas Pipe Line Company" was intended to mean "the Texas Company," and that the error was the result of mutual mistake of the parties. As said by appellant in its brief:

"This appeal in part hinges upon the proper interpretation to be given to the meaning of this term 'posted market price' as the term was used in the contract."

The controversy was as to the correct amount of money due by the defendant to the plaintiff for oil delivered under the contract from August 16, 1923, to the middle of October, 1923.

There was testimony showing that, when the contract was first prepared, the words "posted price" of the Texas Company was used, and that, at the request of a representative of the defendant, the word "market" was inserted after the word "posted" before the contract was executed, so as to make it read, "posted market price," as appears in the contract. Testimony was also introduced tending to show that the prices of oil posted by the Texas Company during the period of time in controversy were then above the market prices of oil of the same quality in the same field. All that testimony was introduced in support of a special plea filed by the defendant that at the time the contract was executed it was understood by and between the parties that the term "posted market price" should mean the price posted by the Texas Company when that price was the price paid in open market by that company in the free and unobstructed course of trade

and competition. It was further alleged in that connection that the prices posted by that company involved in this controversy were above the market prices as so understood, and were voluntarily fixed by the Texas Company for its own individual profit and advantage.

The defendant also introduced in evidence three checks payable to the plaintiff; the first of which was for $18,928.89, with the following notation on its face:

"In payment of 11,636.86 bbls. crude oil run from August 16th to September 15th as per statements."

This check was returned by the plaintiff because of the claim made that it was below the amount due under the contract. On October 19th the defendant again inclosed the check to the plaintiff in a letter containing this statement:

"This covers payment of your oil for the above period mentioned according to our interpretation of your contract, and we trust that you have reconsidered the matter, and that you will accept the inclosed check in full payment of the oil run the last half of August and first half of September."

Plaintiff again returned the check, refusing to accept it because of the insufficiency of the amount which plaintiff claimed to be due it. The defendant for the third time again sent the check to the defendant for its acceptance, and in that letter there was also inclosed the two other checks mentioned above; one for the sum of $6,893.21, with the following notation thereon:

"In payment of 5,514.57 bbls. of crude oil runs for last half of Sept. 1923, as per statement."

And the other check was for the sum of $7,269.39, with this notation thereon:

"In payment of 5,336.09 bbls. of crude oil runs for the 1st half of Oct. 1923, as per statement."

Both of those checks were likewise made payable to the order of Sims Oil Company, plaintiff herein. All three of the checks just mentioned were later collected by the plaintiff company, as evidenced by its indorsements thereon. The giving and acceptance of those checks with the notations thereon was specially pleaded by the defendant as an accord and satisfaction of plaintiff's demand, for which the suit was instituted.

The statement of facts shows many letters and telegrams which passed between the plaintiff and defendant, giving their respective constructions of the meaning of the contract and their respective contentions of the amounts due for oil thereunder; plaintiff insisting that the prices posted by the Texas Company, plus 25 cents per barrel, were the amount which the defendant was bound by the contract to pay for the oil, and the defendant insisting that the prices so posted by the Texas Company would not be controlling if the same were higher than the market prices of the oil when purchased in open market in the same field. The testimony further showed that, after plaintiff received for the third time the check first mentioned, together with the other two checks, the same were collected by it without any further communication with the defendant, and, therefore, without any further contention that the same were insufficient to cover the amounts due under the contract, and with full knowledge of the notations upon the checks already referred to.

At the conclusion of the evidence the court peremptorily instructed the jury to return a verdict in plaintiff's favor for the amount sued for, and a judgment was rendered in accordance with the verdict returned in obedience to that instruction. From that judgment the defendant has prosecuted this appeal.

It is apparent from the record that the trial court reached the conclusion that under the contract between the parties the prices posted by the Texas Company would control, even though such prices were in excess of those prevailing in the same oil field and for which the Texas Company could have purchased the same grade of oil in open market; in other words, that the prices paid by the Texas Company would be the market prices intended by the parties in using the term "posted market prices." In view of testimony introduced and already referred to, we believe that ruling was erroneous. In 38 Corpus Juris, 1261, it is said:

"The term 'market price' has no hard and fast meaning. It has not a fixed and definite meaning which must attach to it invariably, in whatever contract it may occur, irrespective of the context or the surrounding circumstances. There is no magic in the term. When the term becomes a subject of legal controversy, it will be given that meaning which will best serve the purpose and intent of those who use it."

[1] Many authorities are cited in support of that text, and also supporting the further statement that the term "market price" implies price or value in an open market, or prices at which a commodity is commonly sold in the usual and ordinary course of trade and competition. The term "posted market price" we think sufficiently ambiguous to warrant the introduction of testimony to show the meaning of the parties in using it, since the term "market price" might mean what the Texas Company paid for oil on the market, or it might mean the price paid by the public in open market and posted by the Texas Company; and we are of the opinion that under the testimony introduced the defendant was entitled to have the jury pass upon the question which of those constructions were intended by the parties. Kirk v. Bra-

zos County, 11 S. W. 143, 73 Tex. 56; Smith v. T. & N. O. Ry. Co., 108 S. W. 819, 101 Tex. 405; San Jacinto Oil Co. v. Ft. Worth Power & Light Co., 93 S. W. 173, 41 Tex. Civ. App. 493; Long v. McCauley (Tex. Sup.) 3 S. W. 689; Quanah, A. & P. Ry. Co. v. Cooper (Tex. Civ. App.) 236 S. W. 811; Quarry Co. v. Clements, 38 Ohio St. 587, 43 Am. Rep. 442; Kilby Mfg. Co. v. Hinchman Co., 132 F. 957, 66 C. C. A. 67; Keller v. Webb, 125 Mass. 88, 28 Am. Rep. 209; Fayter v. North, 83 P. 742, 30 Utah, 156, 6 L. R. A. (N. S.) 410; Chaplin v. Griffin, 97 A. 409, 252 Pa. 271, Ann. Cas. 1918C, 787; Hudson v. McGuire, 223 S. W. 1101, 188 Ky. 712, 17 A. L. R. 148.

[2] It is also apparent from the record that the trial court adopted the contention urged by the appellee here that plaintiff's cause of action was a liquidated demand, and, since the amount paid to the plaintiff by the three checks mentioned was less than the amount sued for there was no consideration for the accord and satisfaction pleaded by the defendant, and that therefore there was no merit in that defense. After a careful consideration of the many authorities cited by counsel for appellant and appellee, we have reached the conclusion that that ruling was also erroneous. It is a well-settled rule that, when one pays a sum of money which is less than the amount definitely fixed by his contract as owing to another, there is no consideration to support the agreement upon the part of the person receiving the payment that the same would be accepted in full satisfaction of the debt. In 1 Corpus Juris, 551, the following is said:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction, in the absence of fraud, artifice, mistake, or imposition, as the rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance does not apply, where plaintiff's claim is disputed or unliquidated. Under these circumstances there is a sufficient consideration for the settlement. The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive and would have recovered had he brought action, or that he was induced to accept a part of his claim, by fear that he would lose the whole of it, does not in any way affect the operation of the rule, and it is of no importance which of the parties was right in his contention, or that in fact they were both wrong."

Many authorities are cited in the notes to support that statement in the text. The controversy then hinges upon what is meant by an "unliquidated claim" within the meaning of that rule.

If plaintiff's construction of the contract as to what was meant by the "posted market price" be accepted as correct, then it is clear that it is a liquidated claim. If the de-

282 S.W.—57

fendant's interpretation of the meaning of that term be accepted as correct, the claim is likewise a liquidated claim. The question then arises as to whether or not there was a bona fide dispute on the part of the defendant, based on reasonable grounds, as to the proper meaning and intention of the parties to the contract in employing that term, and whether or not by reason of such dispute the defense of accord and satisfaction should be sustained.

[3] In Nassoiy v. Tomlinson, 42 N. E. 715, 148 N. Y. 326, 51 Am. St. Rep. 695, the following is said:

"A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated."

In 37 Corpus Juris, 1264, numerous decisions are cited which concur in and follow that announcement. To a like effect is Powers v. Harris, 94 S. W. 136, 42 Tex. Civ. App. 250, in an opinion by Justice Neill; also Storch v. Dewey, 46 P. 698, 57 Kan. 370, and other decisions cited in notes to the text in 1 Corpus Juris, 554, 555. We concur in the statement of that rule just quoted. Uncertainty is the essence of the term "unliquidated," and, if the amount due is uncertain by reason of a disputed issue of legal right in the creditor to demand that sum made in good faith and upon reasonable grounds, and which dispute is properly determinable by a court upon a question of law or by a court and jury upon a mixed question of law and fact, it follows that the amount due on the claim is uncertain and necessarily unliquidated within the meaning of the common-law rule.

The different contentions of the parties as to the correct amount due under the contract when properly construed clearly was a disputed issue which rendered the amount due uncertain. If defendant's contention was made in good faith and upon reasonable grounds which the evidence introduced tended to prove, and if under such circumstances the plaintiff accepted the checks in full payment of the amount claimed to be due, such would constitute a bar to any recovery in the suit. We are of the opinion, further, that under such circumstances the fact that the amount tendered and accepted was the full amount which defendant claimed to be due under its interpretation of the contract clearly would not militate against the defense. Authorities cited by the appellee, to the effect that a payment of an amount admitted to be due forms no basis for the defense of accord and satisfaction, will not be discussed at length, since we think it clear that they could have no application to the facts of this case.

Accordingly, for the reasons given, the

judgment of the trial court is reversed and the cause is remanded.

## On Motion for Rehearing.

Appellee insists that the conclusions reached by this court on original hearing, as shown in the opinion filed, to the effect that under the testimony introduced the term "posted market price" was sufficiently ambiguous to render it a disputed issue of fact as to whether or not the market price there referred to was understood and intended by the parties to mean such price as the Texas Company might pay for oil purchased by it, or the prices prevailing in the open market in the usual and ordinary course of trade and competition, is in conflict with the decision of the Court of Appeals in American Refining Company v. Staley, 274 S. W. 272. In the case just cited the same contract was involved as was sued on 'in this case, and upon the trial of the case the trial judge excluded testimony tendered by the American Refining Company to show its intention in using the phrase "posted market price" and its reason for inserting the same in the contract. The trial court further concluded as a matter of law that the expression "posted market price" was plain and unambiguous, and not subject to explanation as to what the parties meant and intended by its use, and upon the conclusion so reached judgment was rendered in favor of the plaintiffs Staley and Winn upon an instructed verdict. The Court of Appeals affirmed that judgment, and in the course of the opinion had this to say:

"The words 'posted' and 'market price,' when considered separately, have a well-defined legal meaning, and, when used together, as has been done in this contract, they present no patent ambiguity. When considered in the light of the testimony, there is no latent ambiguity."

[4, 5] It thus appears from the opinion that the only proof offered to show what the parties understood by the use of the quoted term in the contract was testimony of the intention of the American Refining Company in the use of those terms without any proof to show that such intention was made known to the other parties to the contract, or that the question was in any manner discussed between them. It is elementary that a mere secret understanding or intention of one party to a written contract not communicated or assented to by the other party cannot be given effect to vary the terms of the contract, and, therefore, cannot be considered in determining the meaning of the terms used in the written contract upon the same subject. In that respect the case cited is clearly distinguishable from the one at bar, since, as pointed out in the original opinion, the contract between the parties to this suit as originally prepared by the appellee and presented to appellant for its execution contained the words "posted price"; that as so written the representative of the appellant company declined to execute it, unless the word "market" was inserted after the word "posted" so as to make it read "posted market price," as appears in the contract. Appellee's representative acceded to that request, made the change suggested, and the contract was then executed by both parties. Such testimony, considered in connection with other testimony introduced tending to show that the prices posted by the Texas Company were in excess of the price of the same commodity when purchased in open market in the free and unobstructed course of trade and competition, was sufficient to raise the issue of a latent ambiguity, and under such circumstances the issue of the understanding of the parties as to the meaning of the language quoted was a question to be determined by the jury.

It is further insisted that the conclusion we reached on original hearing that the evidence tended to show that the claims made by appellee upon the appellant for amounts due under the contract and for which claims checks were given and accepted were unliquidated claims is in conflict with the decisions in the following cases: Humphrey v. McCarty, decided by this court, reported in 251 S. W. 609, and by the Supreme Court in opinion reported in 261 S. W. 1015; and also in conflict with the decision of the Court of Appeals at Amarillo in the case of Chas. F. Noble Oil & Gas Co. v. Waggoner, in an opinion rendered December 2, 1925, in cause No. 2487, not to be reported.

The McCarty Case was a suit by a lessee in an oil and gas lease to recover from Mrs. McCarty, the lessor, a sum of money which was claimed to be the balance of an excess consideration paid on a lease theretofore executed by her. The proof showed that the lease purported to cover 217 acres of land, and that the contract price therefor was $100 per acre. The lessee paid that price, but later discovered that the tract of land embraced only 131.4 acres, thus making a deficiency of 85.6 acres, for which deficiency the lessor had received $8,560. A controversy having arisen between the lessor and lessee as to the right of the latter to a repayment by the former of the amount of $8,560, the lessee paid to the lessor, by check, the sum of $6,520, or $2,040 less than the amount claimed to be due. In a suit to recover that balance, the lessor pleaded accord and satisfaction, by reason of the acceptance of the check, for the sum of $6,520. The defense was sustained by the trial court, but this court, in an opinion by Mr. Justice Buck, reversed that ruling, and that reversal was sustained by the Supreme Court, as shown in 261 S. W. 1015. The check given in that case by Mrs. McCarty for $6,520 had this memorandum indorsed on it: "For lease to D. H. Humphrey," and, as pointed out in the opinion of Mr. Justice Buck:

"All of the lessees who testified stated positively that they did not agree that the $6,420 received was in full satisfaction of the claim of the lessees against the lessors."

In the opinion by the Supreme Court the following was said:

"The partial payment to plaintiffs was made by a check, on the margin of which was a notation reading, 'for lease from T. D. Humphries.' It is significant and important that this check did not have upon it some such notation as 'in full' or 'in full for all claims.'"

The Supreme Court further pointed out that none of the defendants, though all appeared to have been present at the trial, offered any testimony to rebut plaintiffs' testimony, and it was further pointed out that the testimony did not establish a conclusive case of accord because it lacked a conclusive showing of a mutual consent to that effect.

It thus appears that the defense of accord and satisfaction hinged upon the question whether or not the check given by Mrs. McCarty was understood by the parties to be in full satisfaction of the plaintiffs' demand, and that was a disputed issue of fact.

Likewise in the case of Chas. F. Noble Oil & Gas Co. v. Waggoner, by the Court of Civil Appeals of the Seventh District, referred to above, the controlling question in the defense of accord and satisfaction was whether or not under testimony introduced a check tendered was accepted in full satisfaction of the debt claimed to be owing, as shown by the following excerpt from the opinion:

"The defendant pleaded that there had been an accord and satisfaction of the matters sued for. Pending the negotiations, the defendant sent Waggoner some checks, marked 'payment in full,' and which bore the words: 'Indorsement hereon will constitute receipt in full for items appearing on the statements attached to this check.' Before cashing the checks, Greene, as the representative of Waggoner, wrote the company that the checks would not be accepted in full, and the evidence sustains the acquiescence of the company in this qualified acceptance. Craver testified that the company did not expect Mr. Waggoner to be bound by a test which was inaccurate. The undisputed evidence shows that the October test with the defective machine was inaccurate and was not accepted by either party, and, according to practically all the witnesses upon that point, the gasoline content was higher than shown by such test. The test being admittedly incorrect, and such fact having been admitted upon the trial, there was no dispute or contention and an accord and satisfaction did not arise. No consideration moved to Waggoner for taking less than was actually due him upon a correct test."

[6] The two cases last cited are manifestly distinguishable from the present suit, since in the latter not only was there no testimony offered to show that appellee did not agree to accept the checks in full satisfaction, but, on the contrary, as pointed out in our original opinion, the checks with the memoranda indorsed thereon to the effect that they were given in full payment of the claims therein noted were tendered three times to appellee, accompanied by a letter each time stating that they covered the full amount due for the items mentioned; and, while the first two tenders were declined by appellee, on the ground that the same were for less than the sum due, yet appellee accepted the third tender without further protest or objection, and without any further communication with appellant upon the subject. And, in the absence of some agreement or understanding between the parties as to the acceptance of the checks with the memoranda to the effect that the same were in full payment, such acceptance would be a binding contract of settlement, if the claims were unliquidated claims, under such decisions as Hunt v. Ogden, 125 S. W. 386, 58 Tex. Civ. App. 443, and Bergman Produce Co. v. Brown (Tex. Civ. App.) 172 S. W. 554.

However, since, as shown in our original opinion, the reversal of the judgment of the trial court is based in part on the disputed issue of whether or not the claims sued on were unliquidated, it is unnecessary for us to determine, and we have not intended to decide, the issue as to whether or not the oral testimony, independently of the memoranda contained in the checks, conclusively showed an agreement by appellee to accept the checks in full payment. That question is left open for another trial.

The motion for rehearing is overruled.