J. R. STINSON ET AL. v. JOHN M. GARDNER, COUNTY ATTORNEY.

No. 1264.    Decided February 8, 1904.

**1.—Local Option Law—Contested Election—Pleading.**

In the statement of the grounds for contesting an election under the "Local Option Law," required by article 3397, Revised Statutes, it is not sufficient to allege generally in the language of the statute that the election had been illegally conducted and that such irregularity existed as rendered the true result of the same impossible to be arrived at or very doubtful of ascertaining; facts must be set up which show the existence of one of these grounds.    (Pp. 291, 292.)

**2.—Same—Payment of Poll Tax for Voters.**

The allegation that a certain person had paid the poll tax for 500 voters, without their consent, for the purpose of having them vote against prohibition, did not show illegality in the conduct of the election; the contestant should allege and prove that they cast their votes with the majority; otherwise, the rejection of them would not have changed the result, and the contestant had no cause of complaint.    (P. 292.)

**3.—Same—Failure to Exhibit Poll Tax Receipt.**

An allegation that 900 persons were permitted to vote without exhibiting their poll tax receipts did not show sufficient ground for contesting the election, in the absence of allegation that they were not qualified voters, holding such receipts, and that they, or enough of them to change the result, voted with the majority.    (Pp. 292, 293.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Harrison County.

*F. H. Prendergast,* for appellants.—When a person offers to vote he is required by the Constitution to present his poll tax receipt to the managers of the election, or make an affidavit in writing that he has lost said tax receipt, and leave said affidavit with the election officers.    Constitution, art. 6, sec. 2, amendment of 1902, Acts, 1901, p. 322; Brightley's Election Cases, 452, note to People v. Cook; 10 Am. and Eng. Enc. of Law, 2 ed., 771; Cooley's Const. Lim., 602; Rev. Stats., art. 3397; Gibbons v. Sheppard, 2 Brewster, 117; State v. Hilmantel, 21 Wis., 577.

When the beer and whisky men gave to the tax collector $875 to pay the poll taxes of 500 obscure voters, without authority from said voters, and to qualify then to vote against prohibition, and to induce them to so vote, it was a species of bribery, and so far tainted said voters with the corruption that their votes can not be counted.    State v. Collier, 72 Mo., 13; State v. Purdy, 36 Wis., 213; State v. Olin, 23 Wis., 327;

10 Am. and Eng. Enc. of Law, 2 ed., 782; Catten v. Smith, Brightley's Election Cases, 123; Ewing v. Duncan, 81 Texas, 236; Penal Code, arts. 156, 174; Roby v. Carter, 6 Texas Civ. App., 298.

*Scott & Jones,* for appellee.—The constitutional amendment under consideration does not require the voter to exhibit or show to the election managers his poll tax receipt, but in the language of the said constitutional amendment, he "shall have paid said tax before he offers to vote at any election in this State and hold a receipt showing his poll tax paid before the 1st day of February next preceding such election."

If the constitutional amendment referred to requires that the poll tax receipt should be exhibited by the voter to the election managers, it is only a regulation requiring that qualified voters must make proof of their qualifications before voting; and the failure of the election managers to require a qualified voter to show or exhibit his receipt or file a written affidavit that the same is lost would not deprive him of the right to vote; that is to say, the failure of the election managers to require and preserve the proof of the voter's qualification to vote was an irregularity that does not affect the legality of the ballot.

The court erred in overruling defendant's exception to that part of appellants' petition which sets up that certain persons paid the poll tax of 500 persons for the purpose of qualifying them to vote against prohibition. This was error, because the constitutional amendment is a revenue law, and the payment by others did not disqualify the elector from voting. Date v. Irwin, 78 Ill., 170; Clark v. Robinson, 88 Ill., 504; Kuykendal v. Harker, 89 Ill., 126; State v. O'Day, 69 Iowa, 368; Quinn v. Lattimore, 120 N. C., 426; Whittaker v. Watson, 68 Ark., 555; Kneass' Case, 2 Parsons Eq. Cases, 553; Gillin v. Armstrong, 12 Phila., 626; Findley v. Bisbee, 1 Elsw. Election Cases, 74; 10 Am. and Eng. Enc. of Law, 2 ed., 771, 772.

BROWN, ASSOCIATE JUSTICE.—This is a certified question from the Court of Civil Appeals for the Fifth Supreme Judicial District. The statement and questions are as follows:

"On the 10th day of July, 1903, an election was held throughout Harrison County, in this State, to determine whether the sale of intoxicating liquors should be prohibited in said county. The commissioners court of the county met and on the 25th day of July, 1903, declared the result of said election to be a majority of 786 votes against prohibition. On July 30, 1903, appellants filed a contest of said election under the statute, and in the first count of their petition alleged substantially as follows: That the election had been illegally conducted and that such irregularities existed as rendered the true result of the same impossible to be arrived at or very doubtful of ascertaining. That on the 31st day of January, 1903, certain persons, to contestants unknown, who were desirous of defeating prohibition in Harrison County, through W. R. Hodge, their representative, paid to A. B. Blocker, tax

collector of said county, the poll taxes due by 500 voters of said Harrison County for the year 1902. That such payment was made for the sole purpose of qualifying and inducing the persons owing the tax to vote against prohibition. That the total amount of money so paid was about $875, and was paid without any authority from the persons against whom said poll taxes were assessed and for whom said money was paid. That such persons never repaid the amount or any part thereof and never promised to repay it and never ratified said payment, except so far as to vote by reason of the authority thereby given. That said parties did vote at said election.

"Contestants in the second count in their petition, alleged, in substance, that about 900 persons voted at said election without exhibiting to the managers thereof their poll tax receipts and without making and filing, with the judge of said election, an affidavit in writing stating that such receipts were lost; that said voters wholly disregarded the provisions of the Constitution requiring each voter to hold his poll tax receipt, showing that his poll tax was paid before the 1st day of February preceding the election at which he offers to vote, or to make, in the absence of such receipt, an affidavit in writing that such receipt was lost. That the managers of the election allowed such persons to vote and receive their ballots without requiring them to exhibit their poll tax receipt, or without filing such affidavit.

"The contestee, John M. Gardner, on the 21st day of August, 1903, filed and urged a general demurrer and special exceptions to both counts of contestant's petition.

"The trial judge filed his conclusions of law arising on these demurrers in a written opinion, which is in the record before us. On the 25th day of August, 1903, the demurrers were overruled as to the first count in contestant's petition, the trial judge expressing his conclusion of law arising thereon in the following language: 'A tax which is assessed upon one person and paid for him by another without his previous authority, if he recognize the act and promise to repay the amount on the ground that such person acted as his agent, he thereby acquires the right to vote the same as if he had paid it with his own hand. On the other hand, when the tax is paid by a person other than the person against whom it is assessed, without authority to do so, it is not such compliance with the law as will clothe the voter with the qualifications of an elector as regards taxes. A partisan paying the tax of a voter in order to have him cast a ballot for his candidate or cause does not so far clothe the voter with the qualifications of an elector, unless authorized or ratified by the voter.

" 'The plain intent of the law is to secure the purity of the ballot and the freedom of the voter in his right of suffrage. Now, anything either in the payment of taxes for him or in any other way which will induce the voter to cast his ballot contrary to his will is not tolerated by the law. A person who intends to neglect to pay his tax is not disposed

97 Supreme—19.

to vote, and it could not be said in good policy that a partisan would come along and pay the tax for the voter and thereby induce the voter to vote his way for the sake of public good. The mere voting after the payment by another would not alter the state of the question. Votes of this standing should not be counted on a contest, but should be rejected. The law certainly makes illegal "any privilege bestowed or promised for the purpose of influencing a person in the performance of any duty, regardless of whether the privilege was bestowed direct or under semblance of the payment of a debt."'

"Contestee's demurrer to the second count in contestant's petition, which alleges, in substance, that the managers of the election did not require the voter to show his poll tax receipt, nor file an affidavit that same was lost with the judge of the election, was by the court sustained, and it then held that the illegal votes otherwise complained of are not enough to change or render doubtful the result of the election, and dismissed the case at cost of contestants.

"The conclusions of law reached by the trial judge and grounds upon which the demurrers were sustained as to this phase of contestant's case are expressed by the court as follows: 'The failure of the managers of election to require the voter "to show his poll tax receipt" at the time he offers to vote, or the failure of the voter at the time to exhibit it, does not determine that the person at the time he votes does not "hold a tax receipt showing the payment of his poll tax before the 1st day of February next preceding the election," within the meaning, by proper and practical construction, of that clause of the Constitution, so as to make illegal and void that vote and reject it on a contest. It would be a severe regulation which excludes the votes of qualified voters under such circumstances. The language of the law does not prohibit a more liberal construction in favor of the voter. The language of the Constitution embraces the ideas that if the voter has paid his poll tax, and before the 1st day of February next preceding the election, he is entitled to participate in the election, and that if he has lost his poll tax receipt that the managers of the election may require him to file an affidavit to the effect that he has lost his poll tax receipt. In passing a poll tax law it was intended to regulate the exercise of the privilege to vote. The substantial end in view has been reached when the legal voter votes under prescribed qualifications for voters. To simply exhibit a receipt to the managers of the election would not appear to be of the substance of the law or a condition to be complied with before he can rightfully deposit his ballot, but only a form. If the substance of the regulation of suffrage be not in all respects complied with by the voter at the time he votes, then, on a contest, the requirements of the law can not relate back and be supplied. If only form be the violation, then the vote deposited is not illegal and void. If a voter has exercised a constitutional right, and has done so only in an irregular manner or has disregarded some of the forms, which by intendment does not amount to a qualification, prescribed for the exercise, this will not work a forfeiture

of the right itself. The judges of the election are not deprived of jurisdiction to receive the votes because a qualified voter did not show his receipt for poll tax paid. By failing to show a poll tax receipt the voter would not be considered like one who has not actually paid the poll tax in time. To neglect to comply with the law requiring qualification, not evidence of it, is the essence of any wrong to which the penalty of a forfeiture of a vote would attach.

" 'It follows that the neglect of the provision regulating the exercise of the privilege of voting in requiring a qualified voter to hold a receipt for taxes paid or supply same when lost or misplaced by affidavit constitutes a mere irregularity, and does not affect the right itself. Therefore such votes are not void and illegal, but such requirements of the law can relate back to the time of voting and be supplied on a contest.' ·

"The contestants excepted to the ruling of the court in sustaining contestee's special exception to the second count in their petition and in dismissing the cause and gave notice of and duly perfected their appeal to this court. The contestee also excepted to the ruling of the court in refusing to sustain his special exception to the first count in contestant's petition, and filed cross-assignment of error complaining at this action of the court.

"Question 1. Did the court err in overruling contestee's special exception to the first paragraph or count in the contestant's petition? In other words, did the payment of the poll tax by some person or persons other than the person against whom the poll tax was assessed, for the purpose of qualifying such persons to vote against prohibition and as an inducement to them to vote against prohibition at the election held on the 10th day of July, 1903, in said Harrison County, said money having been paid without any authority from the persons whose tax was paid and never repaid nor promised to be repaid by them to the person who paid said taxes, and never ratified by them, except so far as to vote by reason of the authority thereby given, render illegal their votes so cast at said election?

"Question 2. Did the failure of the voters complained of to exhibit, to the managers of the election, their poll tax receipts, showing that they had paid their poll tax in Harrison County, for the year 1902, before the 1st day of February, 1903, or to file with the judge of said election an affidavit that such receipt was lost, and the reception of the votes of such person by the election managers without requiring the exhibition of such poll tax receipts or the filing of such affidavit, render illegal such persons' vote and authorize the exclusion of the same in the count on a contest?"

Answer to the first question. The trial court erred in not sustaining the contestee's special exception to the first paragraph or count in the contestant's petition.

In making the contest the statute required the contestant to deliver to the contestee a statement of the grounds on which the contest was based.

Rev. Stats., art. 1798. The statutory grounds of contest in a case like this are expressed in article 3397 of the Revised Statutes, as follows: "That the election was illegally or fraudulently conducted; or that by the action or want of action on the part of the officers to whom was intrusted the control of such election, such a number of legal voters were denied the privilege of voting as had they been allowed to vote might have materially changed the result; or if it appears from the evidence that such irregularities existed as to render the true result of the election impossible to be arrived at, or very doubtful of ascertaining." The petition in this case stated broadly, "that the election had been illegally conducted and that such irregularity existed as rendered the true result of the same impossible to be arrived at, or very doubtful of ascertaining." It was not sufficient to allege the grounds in the language of the statute, but facts should have been averred which would show that the election was either illegal, or that the result was impossible to be arrived at, or that it was very doubtful of ascertaining. The facts set up did not show the existence of either ground. The payment by W. R. Hodge of the poll tax for 500 qualified voters of Harrison County, without their consent, with the evil purpose of having them to vote against prohibition, did not constitute illegality in the conduct of the election, for that has reference to the manner of holding the election, which might include receiving illegal votes. Neither is it charged that the 500 voters or either of them voted against prohibition. It was incumbent upon the contestant to allege and prove that the 500 voters had cast their ballots with the majority, otherwise the rejection of them would not have changed the result and the contestant had no cause of complaint. The fact that 500 voters whose taxes had been paid by Hodge voted in the election does not render the true result doubtful nor difficult to be ascertained; therefore, the facts alleged constituted no ground for the contest of the election, and the exception should have been sustained.

Answer to the second question. The failure of voters to exhibit their poll tax receipts at the time of voting did not render the election illegal nor authorize the exclusion of their votes from the count.

Section 2 of article 6 of the Constitution of this State, as amended in the year 1901, expresses the requirement to pay the poll tax in this language: "And provided further, that any voter who is subject to pay a poll tax under the law of the State of Texas shall have paid said tax before he offers to vote at any election in this State and hold a receipt showing his poll tax paid before the 1st of February next preceding such election. Or if said voter shall have lost or mislaid said tax receipt, he shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt had been lost. Such affidavit shall be made in writing and left with the judge of the election, and this provision of the Constitution shall be self-enacting without the necessity of further legislation." It might be inferred from the latter part of the quotation that it was intended the voter should have his poll tax receipt at the place where he voted, but

there is no provision in the Constitution which requires that the receipt shall be exhibited at the time of voting; it only requires the voter shall hold his receipt; that is, that he shall have procured and have possession of the receipt, and if it has been lost, then, in order to vote, he must make the affidavit which the law requires. The petition in this case does not allege that the 900 persons who voted without exhibiting their receipts were not qualified voters. There is no allegation in the petition that the 900 persons voted against prohibition, and, while it would be as illegal for a man to vote for prohibition or against it without exhibiting his receipt, still the contestant could not complain on the ground that illegal votes were cast in favor of prohibition; it was necessary for the petition to show the result of the election against prohibition was caused in whole or in part by the casting of the 900 ballots. The allegations of the second count were insufficient to sustain either ground of contest, and the exception was properly sustained.