### HUFF v. DUFFIELD. (No. 6992.)

(Court of Civil Appeals of Texas. San Antonio. April 11, 1923. Rehearing Denied May 2, 1923.)

**1. Elections ⬦83—Voter held not required to obtain certificate showing exemption from payment of poll tax.**

A voter who is exempt from the payment of a poll tax because of his age and who does not live in a city of 10,000 inhabitants, or more, is not required to obtain an exemption certificate under the express provisions of Vernon's Ann. Civ. St. Supp. 1922, art. 2939.

**2. Elections ⬦73—Temporary absence with intent to return held not to disqualify.**

Under Vernon's Ann. Civ. St. Supp. 1922, art. 2939, voters are not disqualified merely because they temporarily lived in another county, wherein they had acquired no residence, always intending to return.

**3. Elections ⬦83—Voter must produce poll tax receipt or account therefor.**

A voter who fails to produce a poll tax receipt, or to account therefor, is not entitled to vote.

**4. Elections ⬦227(9)—Voters aided in other than English language, disqualified.**

In an action for county and district clerk, where certain Mexicans in voting had been aided by the use of the Spanish language, it was error to count their ballots in view of Vernon's Ann. Civ. St. Supp. 1922, art. 3003, prohibiting the use of any other than the English language in aiding voters.

**5. Elections ⬦227(9)—Failure to comply with statute as to use of English language in aiding voters not subject to waiver.**

Failure to comply with Vernon's Ann. Civ. St. Supp. 1922, art. 3003, prohibiting the use of any other than the English language in aiding voters or in performing any of the duties of the judge of election, cannot be waived by an opposing candidate.

**6. Elections ⬦70—Ballot of resident alien never declaring intention to become American citizen properly rejected.**

In an election for county and district clerk, the ballot of a resident alien, who was not shown to have legally declared his intention to become an American citizen, was properly rejected.

**7. Elections ⬦293(4)—Ballot cannot be varied by parol testimony of voter as his intention to vote for one whose name was erased.**

Since the ballot itself is the best evidence as to how an elector voted, it cannot be contradicted, or varied by parol testimony of the elector that he intended to vote for one whose name had been erased.

**8. Elections ⬦183—Ballot containing names of two candidates for an office, neither of which was erased, when one only is to be chosen, bad as to both.**

Where, in an election for county and district clerk, there were two candidates, a ballot showing that the name of neither one was erased is bad as to both.

**9. Citizens ⬦2—Child born in Mexico of Mexican parents does not become American citizen because brought to this country when two years old.**

A child born in Mexico of Mexican parents, neither of whom ever became American citi-

zens, does not become an American citizen merely because the parents brought him to Texas when he was two years old, where he afterwards remained without making any efforts to become naturalized.

**10. Elections ⬤➾83—Erroneous affidavit as to loss of poll tax receipts held not to disfranchise.**

Where, in an election for county and district clerk, certain voters paid their poll tax, but did not get separate receipts and did not have the receipts with them and were required to make affidavit of loss as a prerequisite to voting under Vernon's Ann. Civ. St. Supp. 1922, art. 2939, when in fact the receipts were not lost, it was error to refuse to allow such voters to cast their ballots.

**11. Elections ⬤➾83—Voter held not permanently disabled under law exempting from payment of poll tax.**

A voter at the county and district clerk election, who swore that he had hurt his back and used two sticks to support himself in walking, was not exempt from payment of the poll tax under Vernon's Ann. Civ. St. Supp. 1922, art. 2942, as being permanently disabled, where the evidence showed that he was the supervisor of a waterworks system, drove about in an automobile, and received 35 cents an hour for his labor.

**12. Elections ⬤➾55—One in charge of post office held not disqualified from presiding at ballot box.**

One taking care of a post office until other arrangements are made, but who is not the postmaster, is not disqualified from being the presiding officer at a ballot box in a county and district clerk election.

**13. Elections ⬤➾188—That name of candidate appears twice on same ballot does not invalidate it.**

That the name of a candidate appears twice on the ballot being printed in one column and written in another does not justify the rejection of the ballot, since noncompliance with Vernon's Sayles' Ann. Civ. St. 1914, art. 2969, relating to form of ballots, does not render ballots invalid, but, if so, it should not render the ballot invalid under article 2970, providing that the name of no candidate shall appear more than once on the official ballot.

Appeal from District Court, Willacy County; W. B. Hopkins, Judge.

Action by R. W. Huff against B. S. Duffield. Judgment for defendant, and plaintiff appeals. Affirmed.

Seabury, George & Taylor, of Brownsville, for appellant.

Graham, Jones, Williams & Ransome, of Brownsville, for appellee.

FLY, C. J. This is an action contesting the election of B. S. Duffield, appellee, to the office of county and district clerk of Willacy county at the general election held on November 7, 1922, instituted by R. W. Huff, appellant. At that election appellant and appellee were the candidates for the offices in question, and the commissioner's court having canvassed the votes, declared that appellant had received 168 votes and appellee 169 votes and issued a certificate of election to appellee. This cause was tried by the district judge, and he concluded, after finding numerous facts as to various and sundry voters, that appellee received 164 legal votes and appellant received 163 legal votes, and consequently adjudged B. S. Duffield to have been duly and legally elected to the office of district and county clerk of Willacy county.

[1] The first and fourteenth propositions, under the first and eleventh assignments of error, attack the conclusion of the court that O. S. Stockwell was a qualified voter. The facts show that this voter had not paid the poll tax and obtained a receipt that would have entitled him to vote in the year 1922. However, he testified that he was born on February 1, 1860, and consequently was 62 years old on February 1, 1922, and therefore, exempt from the payment of poll tax. Not living in a city of 10,000 inhabitants or more, he was not required to obtain an exemption certificate. Article 2939, Vernon's Tex. Civ. Stats. Supp. 1922. That the voter may at other times have stated that he was born in 1861, and not in 1860, was a matter that merely went to his credibility, and the court concluded that his last statement was true. The first and eleventh assignments of error are overruled.

[2] The second, third, eighteenth, and nineteenth assignments of error assail the action of the court in counting the ballots of C. H. Pease and Mrs. C. H. Pease for appellee, on the ground that he "was a married man and residing with wife, Mrs. C. H. Pease, in McAllen, Hidalgo county, on November 7, 1922." While there was evidence tending to show that Pease and wife were not residents of Willacy county, he swore that he was only living in Hidalgo county temporarily, had a home in Willacy county, and had always intended to return and live in it. The court found that no residence had been fixed in Hidalgo county and counted the two votes for appellee. The election law provides that every person 21 years of age, who is a citizen of the United States, and who shall have resided in this state one year next preceding an election, and the last six months within the district or county in which he or she offers to vote, shall be deemed a qualified elector. Article 2939, Vernon's Civ. Stats. 1922 Supp. The word "resided," as used in the election law, and through a long line of decisions, it has been held that the intention of the individual often has a strong, if not a paramount, influ-

ence in determining residency. Savage v. Umphries (Tex. Civ. App.) 118 S. W. 893; Linger v. Balfour (Tex. Civ. App.) 149 S. W. 795; Aldridge v. Hamlin (Tex. Civ. App.) 184 S. W. 602; Read v. King (Tex. Civ. App.) 227 S. W. 960.

We have seen no Texas case denying the test as to whether the person from the place with intent to return or with the intention to abandon it as a residence is a proper test, except the case of Garvey v. Cain (Tex. Civ. App.) 197 S. W. 765, decided in 1917, by the Court of Civil Appeals at Beaumont, which if followed would change the residence of every United States Senator and member of the House of Representatives, the Governor of the State, and heads of departments, disfranchising the former, because they could not vote in the District of Columbia, and forcing the latter to vote in Travis county. No such construction of constitution or statute is warranted by statute or decision, and the same court afterwards repudiated the doctrine herein cited:

"A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change."

We will agree with this decision which is in harmony with all the Texas decisions, rather than the one in Garvey v. Cain, which is supported by no authority and so far as can be ascertained by us has never been cited by any court. The decisions of Texas, on the subject of intent, entering so largely into the determination of the place of residence, is fully supported in an exhaustive report on the subject of "residence" made by a congressional committee in the contested election case of Cessna v. Meyers, Appendix to McCrary on Elections, p. 557.

[3] The evidence fails to show that Conrad Schmidt was a resident of precinct No. 2, or that he had a poll tax receipt or accounted for not presenting it. He lived in precinct No. 1, but voted in No. 2, where he has been at work for about two weeks before the election, and if the decision in the case of Garvey v. Cain were the law, he was entitled to vote in precinct No. 2, because he had been sleeping there for two weeks, if he had obtained a poll tax receipt. No poll tax receipt was produced or accounted for. We think his vote should not have been counted for appellee.

We are of opinion that there was evidence tending to show that Romaldo Garza lived in precinct No. 2, where he voted, and that he was qualified to vote. We overrule the fifth and twenty-first assignment of error.

[4] In connection with the votes of Guadalupe A. de Davila and other Mexicans, it was disclosed that the provisions of Article 3003, Vernon's Civ. Stats. Supp. 1922 prohibiting the use of any other than the English language in aiding voters or in performing any of the duties of the judge of an election, was utterly disregarded and totally ignored. This is such a flagrant disregard of the election law that it should at least cause ballots cast in connection with such contempt for law to be cast out and not considered in the count, if it should not invalidate an election altogether. The law in question, after providing for assistance by two judges of election of voters unable to prepare their ballots on account of bodily infirmity which renders them physically unable to write, or are over 60 years of age and are unable to read and write, and it goes further and provides that such voters must explain how they desire to vote in the English language, "and no judge of the election shall use any other than the English language in aiding the voter, or in performing any of his duties as such judge of the election * * * that they will confine their assistance to answering his questions in the English language, to naming candidates, and, if the voting be at a general election, to naming the parties to which such candidates belong, and that they will prepare the ballot as such voter directs, in the English language." Although sworn to comply with the requirements noted, the uncontroverted evidence shows, and the trial judge so found, that voters who could not speak or understand the English language were assisted through a foreign language in making out their ballots. The court found the following facts in connection with others:

"(a) I find as a fact that Guadalupe A. de Davila cast her ballot at the election under investigation in voting precinct No. 2, and that her ballot was made out and cast by her according to her own judgment and wishes; that she did not understand the English language, and upon her request she was told by one of the officers and judges in Spanish as to how to mark her ballot in the event she desired to vote the Democratic, Republican, or Independent ticket, but no one indicated to her for whom she should vote; and that there was no undue interference by any one with her so doing, and I find that she was in all respects a legal voter, at the time and place she cast her ballot, and I therefore conclude that her ballot was legally cast and counted for contestee and that contestee was and is entitled thereto.

"(b) I further find that three other Mexican voters at said precinct No. 2 cast ballots Nos. 36, 56, and 57, each being cast and counted for contestee; that said voters were unable to understand the English language, and that upon request of said voters the judge of election and a supervisor went to the booth with the voter; that the judge explained to said voters how they should mark their ballots if they wanted to vote a Democratic, Republican, or Independent ticket; that he further told them how to vote if they wanted to vote for Peddy, and that Teller was running for constable; that

said judge, nor any one else, indicated to said voters for 'whom they should vote; that each of said voters marked his or her own ticket and that said ballots were cast, according to the will and wish of. the respective voter; that each of said ballots was legally cast and should be counted as cast for contestee."

Although finding that the law was violated, the court counted four votes mentioned for appellee. If the law as to the English language means anything, as we must conclude it does, it should not be ignored and disregarded, but should be enforced. The four votes should not have been counted for appellee, because they were clearly illegal.

The law undoubtedly makes the ability to speak and understand the English language a necessary qualification for voters in this state desiring assistance, and it is mandatory in stating the only circumstance under which assistance shall be given those who are physically unable to prepare a ballot and those over a certain age mentally incapacitated to prepare a ballot. They are the only ones who can be assisted, and that assistance can only be given when requested in English and must be given in English. Whether a wise law or not, it is the law and must be enforced. That law does not leave it open to construction as to whether it is mandatory or merely directory, but provides that—

"Where any assistance is rendered in preparing a ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes."

As said by McCrary on Elections, § 225:

"If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or effects the result of the election or not. Such a statute is imperative, and all considerations touching its policy or unpolicy must be addressed to the Legislature."

Speaking of the requirement as to numbering ballots and the fact that the voter might be deprived of his vote by the neglect of an officer of the election, the Supreme Court, in State v. Connor, 86 Tex. 133, 23 S. W. 1103, said:

"The Legislature has so enacted, and it must be obeyed. It is unnecessary to discuss the difference between directory and mandatory statutes. The law commands that the number shall be written on the ballot and forbids those not numbered to be counted. * * * 'A clause is directory when the provision contains mere matter of direction and no more; but not so when they are followed by words of positive prohibition.' * * * Prohibitory words can rarely if ever be directory. There is but one way to obey the command, 'Thou shalt not,' which is abstain altogether from doing the act forbidden."

[5] Appellee seems to contend that appellant cannot raise the question as to the illegality of the votes cast by persons who could not understand or speak the English language and were given assistance through the medium of the Spanish language and not the English, because he had waived such illegality. Appellant had no power to waive a law of Texas if he so desired and could not make legal by an agreement the attempt to set aside the election laws of this state. No man nor set of men have it in their power to nullify and destroy a statute of this state, and especially one enacted to purify the ballot box of Texas. The open violation of the law, indicated by the findings of the trial judge, create fundamental error, and it is not a personal matter that can be waived by a party to the suit, if any such waiver was ever attempted.

[6] The seventh assignment of error is overruled. The evidence failed to show that Severo Serna had ever legally declared his intention ·to become an American citizen. The declaration of intention, if made at all, was made "many years ago," which appears from the evidence to have been more than seven years before November, 1922. He does not testify that he ever went before any officer and made the necessary statements and declarations required by the statutes of the United States. His vote was properly rejected. He seems to be spending his time between this country and Mexico.

[7] The eighth and twenty-seventh assignments of error are overruled. An inspection of the ballot cast by Carl H. Huddleston shows that a line of erasure runs across the office of district and county clerk and the Independent ticket, and the last part of the name of appellant was also erased. No attempt was made to erase the name of the office or the name of appellee on the Democratic ticket. Huddleston identified the ballot as the one cast by him. He does not claim that the ballot was changed, but merely that he intended to vote for the man whose name he erased. It would be a dangerous precedent to permit a voter to contradict or vary his ballot. No such practice is ever allowed. The ballot itself is the best evidence as to how an elector voted, and if unchanged the ballot cannot be contradicted or varied by parol testimony. McCrary Elections, § 478; Savage v. Umphries (Tex. Civ. App.) 118 S. W. 893.

[8] The ninth assignment of error complains of the refusal of the court to count for him a ballot by Fred Raymond. An inspection of the ballot shows that neither the name of appellant nor appellee were erased for the office of district and county clerk.

It is the rule that if a ballot contains the names of two persons for the same office, when only one is to be chosen, it is bad as to both. McCrary Elections, § 532. The court properly rejected the ballot.

[9] A child born in Mexico of Mexican parents, neither of whom ever became American citizens, did not become an American citizen merely because his parents brought him to Texas when he was two years old, and he remained here until the time of the election in 1922. He made no effort to become naturalized. If there was any presumption that the father of Jose Alcala had been naturalized, the testimony of Jose destroyed it.

The propositions under the twelfth, twenty-fourth, thirtieth, thirty-first, and thirty-second assignments treat on several different voters, and they are multifarious and confusing. However, it seems to be the contention of appellant that the election should be set aside on account of irregularities in connection with several voters. The wishes of a large majority of the people cannot be thwarted by the fact that one or two voters may have been deprived of the right of suffrage. It may be said that it was not ascertained for whom Tomas Garcia would have cast his ballot had he been permitted to vote. Juan Turner could not speak English nor understand an oath sought to be administered to him when his vote was challenged on the ground that he was not 21 years of age. There is really no merit in the assignments.

Article 2939, herein cited, requires as a prerequisite to voting that the voter has paid and shall hold a receipt for a poll tax paid before February 1st next preceding such election, or shall account for it if it is lost or misplaced. In regard to C. L. Pollock, Mrs. C. L. Pollock, Claude Pollock, C. E. Redlund, and Mrs. C. E. Redlund, the court found that each and all of them had paid all poll and property taxes due by them respectively, but had not received a separate poll tax receipt, so far as disclosed by the record. They were found in all other respects to be qualified voters, and each of them voted for appellee. They were, however, discarded by the trial judge. C. L. Pollock swore that he paid the poll tax for himself and wife in January, 1922, and obtained poll tax receipts for the same. He also swore that Claude Pollock paid his poll tax for 1922 and got a receipt for the same. He and wife and Claude did not have their receipts with them when they voted, but signed the paper presented to them by the judges of election, and they were permitted to vote. They certified they had paid the tax as required by law. They did not know precisely where their receipts were. The same facts were true in regard to C. E. Redlund and wife. The statute does not prescribe the form of affidavit, the object being to collect a poll tax from every voter as the price of his exercise of the right of suffrage. The law never intended to disqualify a voter who has actually and in good faith paid his poll tax, by reason of the failure of some officer to perform his technical duty. As to a matter of registration which is required in New York and whose provisions are similar to those in regard to poll tax requirements, the Court of Appeals of New York held, in the case of People ex rel. Frost v. Wilson, 62 N. Y. 186, that statutes directing a mode of proceeding of public officers are regarded as directory, unless there is a provision which shows that it is mandatory. The court said of the clause which prohibited any one from voting unless his name was on the register:

"The construction claimed by the relator, if admitted, would punish the electors for the delinquencies of the inspectors, and render the right of suffrage insecure, and liable to be defeated by their fraud, caprice or negligence."

[10] The five voters herein named, who were disqualified by the court, paid the tax, got receipts, which were not accessible, and each of them made the affidavit required by the officer. They should not be disfranchised by the negligence of the officers of the election. The right of suffrage is too sacred a right for a voter to loose it through no fault of his own but through the failure of an officer to fulfill his duty. In the case of Stinson v. Gardner, 97 Tex. 287, 78 S. W. 492:

"It might be inferred from the latter part of the quotation that it was intended the voter should have his poll tax receipt at the place where he voted, but there is no provision in the Constitution which requires that the receipt shall be exhibited at the time of voting; it only requires the voter shall hold his receipt; that is, that he shall have procured and have possession of the receipt, and if it has been lost, then, in order to vote, he must make the affidavit which the law requires."

These voters should not have been required to make affidavit of loss, because they did not claim the receipts were lost, but merely that they were at home. The officers were satisfied that the five voters had the receipts when they swore they had paid the tax. The whole end desired to be gained by Constitution and statute is that the voter shall have a poll tax receipt and that the election officers shall be satisfied of that fact. The voters did all that was required of them by law. We are of the opinion that the poll tax paid by McCarens in 1921 qualified them to vote at the election in 1922 in Willacy county, and that their votes were properly counted for appellant. The same

is true as to the votes of Mr. and Mrs. Boner. They were qualified to vote.

[11] The court erred in holding that H. C. Smith was a qualified voter and that his ballot should be counted for appellant. He swore that he had hurt his back and used two sticks to support himself when he walks. He was partially paralyzed. The law exempts every person who has lost a hand or foot or is permanently disabled. Article 2942. The facts are that H. C. Smith is 53 years old and was crippled four years ago by a fall from a derrick. He was in bed four or five weeks. He uses canes in walking. He has charge of the water pump at Lyford, which is propelled by a gasoline engine; he supervises the waterworks system, attends to meter tests, and sometimes cleans meters. He goes about in an automobile which he drives himself. He starts the car by hand, having no self-starter. The car is one familiarly known as a "Ford." He gets 35 cents an hour for his labor on an average of $25 per month. Under the authority of Bigham v. Clubb, 42 Tex. Civ. App. 312, 95 S. W. 675, McCormick v. Jester, 53 Tex. Civ. App. 306, 115 S. W. 278, and Hillert v. Schweppe (Tex. Civ. App.) 234 S. W. 152, we hold that H. C. Smith was not permanently disabled in the eyes of the law. The facts of this case are quite similar to those in the last case cited, decided by this court. The vote of Smith should not have been counted for appellant.

[12] The objections urged to the votes of 15 persons because Charles H. Schmerhorn was the presiding officer at the box where the persons voted and was also acting as postmaster, and he alone wrote his name on the back of each of the ballots, are overruled. He was not the postmaster, but merely taking care of the office until other arrangements were made. The votes were properly counted for appellant.

[13] On the ballot cast by S. S. Rose for appellant the name of the latter appeared twice thereon, being printed in one column and written in another column. We do not feel inclined to defeat the evident wish of the voter to vote for appellant. It has been held that noncompliance with the provisions of article 2969 would not render ballots invalid, and, if so, it should not render a ballot invalid under article 2970. Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1166.

Our conclusions are that five votes herein indicated as being illegal should be deducted from the total of 164 votes found to have been cast for appellee, and that the five votes of the Pollocks and Redlunds which were rejected by the trial judges should be counted for appellee, leaving him still 164 votes. We conclude that appellant's vote should be decreased by one vote permitted for him, leaving him with 162 votes. This attains the same result as that arrived at by the trial court.

The judgment as corrected in the number of votes legally cast is affirmed.