

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Marvin H. Brown, Jr.
Criminal District Attorney
Fort Worth, Texas

Attention: Mr. Stewart W. Hellman
Assistant Criminal
District Attorney

Dear Sir:

Opinion No. 0-1809
Re: (a) Eligibility of tubercular
inmates of Elmwood Sanitarium
to vote.

(b) If eligible, question of
whether exempt on grounds of
permanent disability.

Thank you for your letter of January 6, 1940, requesting an opinion from this department based upon the following facts. We quote:

"There is operated in Tarrant County, Texas, an institution known as the Elmwood Sanitarium. This institution is for indigents who are tubercular, and the same is jointly operated by the city of Fort Worth and county of Tarrant. By that, I mean that the cost of maintaining said institution is borne equally between the city of Fort Worth and the county of Tarrant. * * *

"The only requirement made covering admission of patients to the sanitarium, is that the individual must have been a resident of Fort Worth and/or Tarrant County for two years immediately preceding the time of making his application for admission, and, of course, be a tubercular.

"* * *"

The questions you desire to have answered have been restated as follows:

(a) Whether or not the inmates of Elmwood Sanitarium are "paupers supported by the county" within the meaning of Section 1 of Article VI of the Constitution of Texas and Article 2954 of the Revised Civil Statutes, 1925, so as to disqualify them as electors.

(b) If the residents of Elmwood Sanitarium, or any of them, are not disqualified as electors, is their tubercular condition sufficient to constitute "permanent disability" within the meaning of Article 2959 and 2960 of the Revised Civil Statutes, 1925.

Section 1 of Article VI of the Constitution of Texas, reads in part as follows:

"Section 1. The following classes or persons shall not be allowed to vote in this state; to wit:

"* * *

"Third: All paupers supported by any county.

"* * *"

Article 2954 of the Revised Civil Statutes, 1925, reads in part as follows:

"The following classes of persons shall not be allowed to vote in this State:

"3. All paupers supported by the county."

A pauper is one who is indigent or very poor, and the term is usually understood to imply one so indigent as to be dependent on the public for support. 32 Tex. Juris. p. 611, Kirk vs. Brazos County, 73 Tex. 56, 11 S.W. 143; 3 Bouvier's Law Dictionary 2539; In re Barnes, 180 Atl. 718, 119 Pa. Super. 533; Spokane County vs. Arvin, 13 Pac.2d 1089, 1090, 169 Wash. 349; Town of Ellington vs. Industrial Commission, 273 N.W. 530, 225 Wis. 169; Risher vs. State ex rel Martin, 9 N.E. (2d) 151, 153, 55 Ohio App. 151; Cloyd vs. Vermillion Co., 196 N.E. 802, 360 Ill. 610.

As stated in 32 Tex. Juris. p. 611: "The term certainly cannot be applied to a person who has always been able to support himself and those dependent upon him." Moreover, there is a substantial doubt under the authorities as to whether one falls within the definition of a pauper when he receives aid from private as distinguished from public sources -- relatives and friends.

Article 2351, Revised Civil Statutes, 1925, reads in part as follows:

"Each commissioners court shall:

"* * *

"11. Provide for the support of paupers * * *, residents of their county, who are unable to support themselves. By the term resident as used herein, is meant a person who has been a bona fide inhabitant of the county not less than six months and of the State not less than one year.

"12. Provide for the burial of paupers."

Article 4438 of the Revised Civil Statutes, 1925, which was first enacted in 1876, the year of our present Constitution, reads as follows:

"If there is a regular established public hospital in the county, the commissioners court shall provide for sending the indigent sick of the county to such hospital. If more than one such hospital exists in the county, the indigent patient shall have the right to select which one of them he shall be sent to."

A concise statement of the duties and responsibilities of the county with respect to paupers was given by the court in Willacy County v. Valley Baptist Hospital, (C.C.A. 1930), 29 S.W. (2) 456:

"The powers and duties of the county commissioners' courts, and the obligations of the counties to paupers, are fixed by statute, and cannot be enlarged upon by unnecessary implication. These powers and duties, in so far as applicable here, are defined in and restricted by the provisions of articles 2351 and 4438, Rev.St. 1925. In article 2351 it is provided that each commissioners' court shall (subdivision 11) 'provide for the support of paupers* * *residents of their county, who are unable to support themselves,' and (subdivision 12) 'for the burial of paupers.' In article 4438 it is provided that 'If there is a regular established public hospital in the county, the commissioners court shall provide for sending the indigent sick* * * to such hospital.' In the latter provision the duty and authority of the commissioners' court to send the indigent sick to hospitals is limited to 'public' hospitals within the county, which provision, by necessary implication, excludes any duty or authority to send such persons to private hospitals, or to public hospitals without the county."

Moreover, as stated in 32 Tex. Jur. at p.612:

"The term 'support', as here used, means more than supplying food, clothing and living quarters; it means all that is necessary to bodily health and comfort, including proper care and treatment during sickness. This, it has been said, 'is a supreme obligation of humanity, independent of any statutory mandate.'" See also Monghon vs. Van Zandt County, 3 App.C.C. § 198.

Consequently, we find that it is the duty and responsibility of the county to care for paupers or indigents whether they be sick or well, and the question of whether or not patients in the Elmwood Sanitarium are entitled to vote depends upon whether or not they are "paupers supported by the county" within the meaning of the Constitution and statutes.

In this connection we take the liberty to quote from your letter as follows:

"It is, of course, true that all of these patients are indigents, but they are not inmates of the County Home. There is such a County Home in Tarrant County, the inmates of which, we believe, come within classification number three of Article 2954, and, in addition, the inmates of Elmwood Sanitarium are technically not 'supported by the county', inasmuch as said institution is operated jointly by the county and city, as heretofore pointed out."

Since it is the duty and responsibility of the county to care for its paupers whether they are sick or well and since it is the further duty of the commissioners' court to send the indigent sick to a public hospital in the county, we do not believe that the mere fact that these paupers are in the Elmwood Sanitarium, a public hospital, rather than the Tarrant County Home is material to the question of whether or not they are "paupers supported by the county."

Nor do we believe the mere fact that the Elmwood Sanitarium is an institution operated jointly by the city and county, sufficient to take the inmates thereof out of the classification of "paupers supported by the county." Whatever may have been the policy of the framers of our Constitution and the Legislature in placing this qualification upon the right to vote, that policy is just as effectively undermined so long as these paupers are wholly objects of the public charity whether the county must pay entirely for their upkeep or only partially as in the case at hand. In any event the ends to be subserved are the same. As we understand the facts the indigent in the Elmwood Sanitarium look wholly to the government, county and municipal,

for their maintenance and consequently, we must hold that such inmates are supported by the county. In this connection the case of Kirk v. Brazos County, 73 Tex.36,11 S.W. 143, is of interest. In that case in construing a contract between a county and a poor farm superintendent, the Supreme Court suggested that paupers may only partially be aided and yet be "supported by the county."

Of course the status of any particular inmate as a pauper is to be determined by the peculiar facts and circumstances of each case. However, from your statement of facts we have assumed that they are indigents, supported wholly by the public, and we hold in answer to your first question that such indigents are paupers supported by the county within the meaning of Section 1, of Article VI of the Constitution of Texas and Article 2954 of the Revised Civil Statutes, 1925, so as to disqualify them as electors.

Given the case of one of such inmates who is not supported wholly by the public or does not otherwise come within the definition of a pauper set forth in this opinion, your second question involves an interpretation of Articles 2959 and 2960 of the Revised Civil Statutes, which reads as follows:

"Art. 2959. A poll tax shall be collected from every person between the ages of twenty-one and sixty years who resided in this State on the first day of January preceding its levy, Indians not taxed, persons insane, blind, deaf or dumb, and those who have lost a hand or foot, or permanently disabled, excepted. It shall be paid at any time between the first day of October and the first day of February following; and the person when he pays it, shall be entitled to his poll tax receipt, even if his other taxes are unpaid."

"Art. 2960. Every person who is more than sixty years old or who is blind or deaf or dumb, or is permanently disabled, or has lost one hand or foot, shall be entitled to vote without being required to pay a poll tax, if he has obtained his certificate of exemption from the county tax collector when the same is required by the provisions of this title."

We believe the question of whether or not any such inmates are "permanently disabled" so as to relieve them from the necessity of paying a poll tax is also a question of fact. And we further believe the proper test for an exemption on grounds of permanent disability to be

Hon. Marvin H. Brown, Jr., page 6

whether or not the claimant is capable, or within a reason-
able time will be capable, of earning a livelihood, capable
of engaging in a gainful occupation. McCormick v. Jester,
115 S.W. 278; Hillert, et al. v. Schweppe, 234 S.W. 152;
Huff v. Duffield, 251 S.W. 298. The word "permanent" while
not meaning perpetual signifies "continuing" as opposed to
"temporary."

Of course the status of each claimant must rest
upon its own facts and no rule of thumb can be laid down
which will suffice to measure all cases.  In U.S. vs.
Rentfro (C.C.A. 10th Cir.) 60 Fed.(2d) 488,489; Falbo vs.
U.S. (C.C.A. 9th Cir.) 64 Fed.(2d) 948 and U.S. vs.Bishop
(C.C.A. 6th Cir.) 90 Fed.(2d) 65,66,67, incipient tubercu-
losis was held curable, and not of itself to constitute
permanent disability.  On the other hand in Mississippi
and New York, tuberculosis — at least in its later
stages—has been held to constitute a permanent disability
within the meaning of a clause in an insurance policy.
Equitable Life Assurance Society vs. Serio, 155 Miss.515,
124 So.485; Ginell vs. Prudential Insurance Company of
America, 196 N.Y. Sup.337, 119 Misc.Rep. 467, 200 N.Y.
Sup. 261,262, 205 App.Div.494.

Consequently, in answer to your second question,
you are respectfully advised and it is the opinion of this
department that tuberculosis does not per se entitle a
claimant to an exemption from the poll tax on the ground
of permanent disability.  We must refrain from suggesting
any blanket exemption for residents of the Elmwood Sani-
tarium and respectfully suggest that a physician will be
better able than this department to determine the status
of any particular case.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN. 16,1940         By (Signed) WALTER R. KOCH
                                              Assistant
s/ W.F.MOORE
FIRST ASSISTANT              By (Signed) JAMES D. SMULLEN
ATTORNEY GENERAL

JDS: jm                      APPROVED OPINION COMMITTEE
AMM                          BY B.W.B. Chairman